648 F.2d 1129
 26 Fair Empl.Prac.Cas. 124,
25 Empl. Prac. Dec. P 31,789
Tommie W. TAYLOR, Larry C. Peyton, James H. Bibbs, Ike
Bolden, Virginia Burke, Bowman Burns, Jr., Fred Donley, Ray
Jackson, Ray Kennard, Will Simmons, William Walker, James
Walters, Jr., Cato Conley, Joseph Harris and Earl Jones,
Godfrey Hill, Appellees,
v.
TELETYPE CORPORATION, Appellant.
Tommie W. TAYLOR; Virginia S. Burke; Earl Jones and William
Jones Walker, Appellants,
v.
TELETYPE CORPORATION, Appellee.
 79-2027, 80-1681 and 80-1658.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1981.
Decided May 1, 1981.
As Corrected on Denial of Rehearing June 15, 1981.
 
 James M. Staulcup, Jr., Skokie, Ill., G. Ross Smith, Little Rock, Ark. (argued), for appellant.
 John T. Lavey, Perlesta A. Hollingsworth, Little Rock, Ark., for cross-appellants.
 Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Tommie Taylor and Larry Peyton brought this action against Teletype Corporation (Teletype or the Company) alleging racial discrimination in the demotion of Company employees, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1976). The district court permitted fourteen individuals to intervene and certified a class, comprised of all black employees who were demoted after February 28, 1974, designating these intervenors and the two named plaintiffs as the class representatives.
 
 
 2
 On August 29, 1979, the district court[1] determined that appellees had established a prima facie case of classwide discrimination for the years 1974 through 1976 but had failed to prove discrimination for the years 1977 through 1979. Taylor v. Teletype Corp., 475 F.Supp. 958 (E.D.Ark.1979). The district court also resolved the claims of the sixteen class representatives, finding discrimination in four of the cases. By its order of November 2, 1979, the court issued a permanent injunction against Teletype and ordered reinstatement of the four successful individuals with backpay. Taylor v. Teletype Corp., 478 F.Supp. 1227 (E.D.Ark.1979). On June 27, 1980, the court entered judgment on the individual claims and made certain awards of backpay, reinstatement, and attorney's fees. Taylor v. Teletype Corp., 492 F.Supp. 405 (E.D.Ark.1980).
 
 
 3
 In No. 79-2027, an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1), Teletype challenges the injunction and the findings of discrimination in the class and individual claims. In No. 80-1681, Teletype appeals the individual relief awarded to Tommie Taylor and Larry Peyton and the award of attorney's fees. Four of the unsuccessful individual claimants cross-appeal in No. 80-1658. We affirm the district court findings regarding discrimination in the class and individual claims in all but one case, vacate the permanent injunction, and remand for further proceedings.
 
 
 4
 I. Background.
 
 
 5
 The court and the parties accepted the findings of fact and conclusions of law in the related case of Hoard v. Teletype Corp., 450 F.Supp. 1059 (E.D.Ark.1978). That decision, therefore, forms the backdrop for this litigation.
 
 
 6
 The Hoard opinion, as well as the findings by Judge Arnold, detail a history of deliberate racial discrimination by the Company, beginning with Teletype's opening of the Little Rock plant in 1957. Although the law did not provide sanctions against such conduct before July 2, 1965, the effective date of the Civil Rights Act, Teletype continued to discriminate long after that date. At least until 1971, the Company continued to discriminate in hiring for certain entry level jobs.[2] Through 1974, the Company continued to discriminate in hiring for professional and supervisory positions and, through 1977, in promotions to positions above grade 96 and to supervisory positions. At the time of the Hoard trial, no black had ever served in an upper-level management position at the Little Rock plant, a category that included one vice president, two managers, three assistant managers, and twenty-two department chiefs. For the years 1971 through 1977, the period covered in the Hoard litigation, the trial judge found that Teletype had discriminated in the promotion of blacks to certain jobs, but that plaintiffs had failed to establish discrimination in other job promotions or in the Company's discharge practices.[3]
 
 
 7
 The present litigation concerns Teletype's allegedly discriminatory demotion practices. As certified by the district court, the class includes:
 
 
 8
 Those black employees of the defendant who were demoted on or after February 28, 1974, including both bargaining-unit and non-bargaining-unit employees, and including those persons still employed by defendant and those employees no longer employed by defendant. (Taylor v. Teletype Corp., supra, 475 F.Supp. at 961.)
 
 
 9
 As previously noted, the court held that plaintiffs had succeeded in establishing a prima facie case of discrimination for the years 1974 through 1976, but had failed to prove discrimination for the years 1977 through 1979. Pursuant to these findings, Judge Arnold issued an injunction and instituted a procedure for individual members of the class to establish their entitlement to relief. The court also made specific findings regarding the sixteen individual claims of the named plaintiffs and the intervenors, granting relief in four cases but dismissing the remaining twelve.
 
 On appeal, Teletype contends:
 
 10
 1) That the trial court's finding that plaintiffs established a prima facie case of discrimination rests on errors of law and clearly erroneous findings of fact;
 
 
 11
 2) That the court abused its discretion in permanently enjoining defendants from discriminating on the basis of race;
 
 
 12
 3) That the court erred in finding that the Company failed to rebut the claims of employees Taylor (second demotion),[4] Peyton, Bibbs, and Harris; and
 
 
 13
 4) That the court abused its discretion in ordering greater relief to Taylor and Peyton than was permissible under the evidence.
 
 
 14
 On their cross-appeal, plaintiffs challenge the court's finding that Teletype did not discriminate in the demotions of Virginia S. Burke, Earl Jones, and William James Walker and in Taylor's first demotion.
 
 
 15
 II. Classwide Discrimination.
 
 
 16
 We first consider the challenge to the district court's conclusion that the class established a prima facie case of discrimination.[5] Essentially, Teletype argues that the district court's finding rested on insufficient evidence. We do not agree and therefore affirm the court's finding of classwide discrimination.
 
 
 17
 Teletype incorrectly views the district court's finding of discrimination as resting upon the Griggs theory of disparate impact.[6] The district court properly viewed these claims as alleging discriminatory treatment. Accordingly, the court considered relevant factors and concluded that Teletype had subjected the class of black employees to different treatment than white employees regarding demotions because of their race.[7] Our review of the record discloses sufficient evidence to support the court's finding of classwide discrimination. We turn now to an analysis of the relevant evidence on this issue produced at trial.
 
 
 18
 The court in part rested its finding on statistical evidence of layoffs, which suggested that a racially discriminatory pattern of layoffs existed for the years 1974 through 1976. During those years, according to appellees' statistician, Dr. Frank A. James, blacks accounted for 24.7 percent of those laid off, but only 20.4 percent of the work force. The demonstrated difference between the actual and expected number of blacks laid off yielded a standard deviation of 2.28,[8] within the two-to-three deviation figure suggested by the Supreme Court as acceptable statistical proof of discrimination.[9] Hazelwood School District v. United States, 433 U.S. 299, 308-09 n.14, 97 S.Ct. 2736, 2741-42 n.14, 53 L.Ed.2d 768 (1977). See also Hameed v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 396, 637 F.2d 506, 512-14 & nn. 8 & 9 (8th Cir. 1980).
 
 
 19
 Numbers must be statistically significant before one can properly conclude that any apparent racial disparity results from some factor other than random chance. If the disparity is established as statistically significant and race is the only evident variable separating the two groups, a court may infer that racial considerations are responsible for the results. The size of the disparity affects only its probative weight. The defendant may, of course, explain the disparity by showing that some factor other than race, such as a bona fide seniority system, caused the demonstrated difference.
 
 
 20
 In this appeal, Teletype challenges the relevance of the layoff statistics, as well as the accuracy of plaintiffs' data base. As a defense, Teletype asserts that it demoted workers according to a bona fide seniority system.
 
 
 21
 Teletype first argues that layoff statistics are not relevant to the class's claim of discriminatory demotions. The district court found that the layoff figures serve as a suitable surrogate for demotions, because a layoff is itself a demotion and many of those laid off had been demoted first and later dismissed because they could not be placed after the demotion. Article 28 of the collective bargaining agreement also demonstrates some connection between the two.[10] Any lack of correlation between demotions and layoffs affects the probative weight of these statistics, rather than their relevance. Teletype has not demonstrated the irrelevancy of this evidence by showing that no relationship exists between layoffs and demotions. See Detroit Police Officers Ass'n v. Young, 608 F.2d 671, 687 (6th Cir. 1979), appeal docketed, No. 79-1080 (U.S. Jan. 10, 1980). We find no error in the district court's consideration of these statistics as relevant evidence.
 
 
 22
 Teletype introduced its own statistical evidence regarding demotions for 1974 through 1979.[11] These statistics show no significant disparate treatment between whites and blacks over these years. Teletype contends that the district court improperly ignored these statistics, the evidence most relevant to demotion practices. The district court, however, did not ignore these statistics; rather it deemed them insufficiently refined to negate the statistical showing of discrimination for part of the period under consideration. The class presented a year-by-year breakdown, albeit in layoffs, that showed discrimination for some years and not for others. Had Teletype presented a yearly analysis of demotions showing no discrimination in any of the years, we might agree that a finding of discrimination would not be justified. We find nothing in the Company's evidence, however, giving results only for the overall five and one-half year period to contradict the court's finding that for certain of the years (1974 through 1976) a discriminatory pattern of demotions existed.
 
 
 23
 Teletype also attacks the court's reliance on appellees' layoff analysis as clearly erroneous by challenging the accuracy of plaintiffs' data base. Defendant first questions the inclusion of supervisory personnel in the layoff statistics. The district court rejected this claim, finding that the number of supervisory employees was small and that no distortion was shown. We cannot conclude that this finding is erroneous. Teletype also claims inaccuracies due to the statistician's reliance on year-end work force reports when a more accurate analysis was available. The Company, however, makes no showing that the figures used produced inaccurate results or that a different result would have been reached had the statistician used a different population base. Statistics and statistical analysis should be treated like any other evidence in that the trial court, in the first instance, should resolve challenges to the conflicting assertions presented by the parties' respective experts and their supporting data. See Hazelwood School District v. United States, supra, 433 U.S. at 312, 97 S.Ct. at 2743. This court may not overturn the resulting findings unless a party demonstrates them to be clearly erroneous; appellant has failed to meet its burden here.
 
 
 24
 As a defense, Teletype asserts that demotions, because determined pursuant to a bona fide seniority system, are protected under section 703(h) of Title VII, 42 U.S.C. § 2000e-2(h) (1976). The district court disagreed, finding that seniority does not control the making of demotions, relying on a Hoard finding to that effect and on article 28 of the collective bargaining agreement, which sets forth numerous subjective standards that supervisors may use to override the seniority system. We cannot characterize the trial court's finding as clearly erroneous.[12] The court could properly discount the testimony of f Teletype's witness that seniority determines demotions as contrary to the written guidelines. In addition, the court could rely on the Hoard finding because, as Teletype's personnel chief explained, the process for downward movement merely mirrors the upward movement at issue in the Hoard litigation.
 
 
 25
 As recognized by the district court, the layoff statistics alone did not establish a prima facie case of discrimination because of the small statistical disparity[13] and the circumstantial nature of the evidence. The court, however, considered other relevant evidence in making its determination of a prima facie case. The court deemed the prior history of discrimination by Teletype to be especially relevant. It also took into consideration the subjective decisionmaking of the Company in its demotion practices and the existence of an all-white supervisory force, which made all demotion and promotion decisions. Although this evidence provides no direct proof that Teletype discriminated in making demotions, it bolsters the trial court's conclusion of discrimination. See, e. g., Satz v. ITT Financial Corp., 619 F.2d 738, 746 (8th Cir. 1980); Fisher v. Proctor & Gamble Manufacturing Co., 613 F.2d 527, 546 (5th Cir.), cert. denied, -- U.S. --, 101 S.Ct. 929, 66 L.Ed.2d 845 (1980); Donnell v. General Motors Corp., 576 F.2d 1292, 1298 n.12 (8th Cir. 1978). From a review of the record, we conclude that the evidence cited by the district court, together with the layoff statistics and other miscellaneous evidence,[14] supports the prima facie finding of discrimination.
 
 
 26
 We conclude that substantial evidence supports the district court's overall finding of classwide discrimination in the Company's demotion practices for the years 1974-76 and that the court's factual findings are not clearly erroneous. Accordingly, we affirm the classwide finding.
 
 
 27
 III. Injunctive Relief.
 
 
 28
 After finding that the class had established a prima facie case of discrimination, the district court issued a permanent injunction, ordering that
 
 
 29
 Teletype Corporation be, and it is hereby, permanently enjoined from discriminating against any individual with respect to his or her compensation, terms, conditions, privileges of employment, or in any other manner, because of such individual's race. (Taylor v. Teletype Corp., supra, 478 F.Supp. at 1228.)
 
 
 30
 Teletype argues on appeal that the district court erred in issuing the injunction because of the court's finding that the defendant did not discriminate in making demotions after December 31, 1976.
 
 
 31
 The parties recognize that once discrimination has been established in a Title VII action, the issuance of an injunction rests in the sound discretion of the district court, even if the employer has begun to comply with the law in good faith. Carter v. Gallagher, 452 F.2d 315, 324 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 429 (8th Cir. 1970). Cf. Scotch Whiskey Ass'n v. Barton Distilling Co., 489 F.2d 809, 813 (7th Cir. 1973) (good-faith compliance with Lanham Trademark Act). In considering the grant of an injunction, the district court, of course, must consider voluntary efforts at correcting past discrimination, but such efforts do not preclude injunctive relief. Harless v. Duck, 619 F.2d 611, 618 (6th Cir.), cert. denied, -- U.S. --, 101 S.Ct. 212, 66 L.Ed.2d 92 (1980). See also Campbell v. McGruder, 580 F.2d 521, 541 (D.C.Cir.1978); Gates v. Collier, 501 F.2d 1291, 1321 (5th Cir. 1974); Williams v. General Foods Corp., 492 F.2d 399, 407 (7th Cir. 1974). Although we cannot say at this point in the litigation that the district court abused its discretion, we nevertheless must order the permanent injunction vacated as prematurely granted.
 
 
 32
 The issuance of the injunction rested on relatively weak, although sufficient, evidence of classwide discrimination, and on the finding of discrimination in four individual cases.[15] Weighing these findings against the finding of no discrimination for the three years immediately preceding the injunction, we have serious doubt as to the appropriateness of this kind of relief.[16] We need not finally determine the propriety of the permanent injunction in this appeal, however, for the district court has yet to decide many of the individual claims for relief. Until those cases are decided, the question of whether Teletype engaged in widespread discrimination, or merely a few isolated illegal acts, remains open. This incomplete record will not justify permanent injunctive relief at this time. We, therefore, vacate the injunction.[17]
 
 
 33
 IV. Individual Claims.
 
 
 34
 The district court found that Teletype failed to rebut the individual claims of Tommie Taylor, Larry Peyton, James Bibbs, and Joseph Harris. Teletype contends that the court erred in making such findings.
 
 
 35
 Once a plaintiff establishes a prima facie case of classwide discrimination, the burden shifts to the employer to prove that the individual employment decision was free from that discrimination. As the Supreme Court has stated,
 
 
 36
 (t)he holding in Franks (v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444) that proof of a discriminatory pattern and practice creates a rebuttable presumption in favor of individual relief is consistent with the manner in which presumptions are created generally. Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof. See C. McCormick, Law of Evidence §§ 337, 343 (2d ed. 1972); James, Burdens of Proof, 47 Va.L.Rev. 51, 61 (1961). See also Keyes v. School Dist. No. 1, 413 U.S. 189, 208-209 (,93 S.Ct. 2686, 2697, 37 L.Ed.2d 548). These factors were present in Franks. Although the prima facie case did not conclusively demonstrate that all of the employer's decisions were part of the proved discriminatory pattern and practice, it did create a greater likelihood that any single decision was a component of the overall pattern. Moreover, the finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer. Finally, the employer was in the best position to show why any individual employee was denied an employment opportunity. (International Brotherhood of Teamsters v. United States, 431 U.S. 324, 359-60 n.45, 97 S.Ct. 1843, 1866-67 n.45, 52 L.Ed.2d 396 (1977).)[18]
 
 
 37
 Accord, Williams v. Anderson, 562 F.2d 1081, 1088 (8th Cir. 1977). In other words, "a company's general discriminatory practices (furnish) a strong inference that a particular applicant was rejected because of racial considerations, (but) such a presumption is not conclusive." United States v. N. L. Industries, Inc., 479 F.2d 354, 371 (8th Cir. 1973). See also Parham v. Southwestern Bell Telephone Co., supra, 433 F.2d at 428.
 
 
 38
 In this case, the district court found that the plaintiffs established a prima facie case or classwide discrimination. Accordingly, we must consider whether the district court erred in concluding that Teletype failed to rebut the prima facie claims of the four individuals in question. The nature of evidence required to overcome the presumption of discrimination depends, of course, on the strength of the initial prima facie finding, which was not particularly strong here. We will proceed to consider each individual claim.
 
 
 39
 A. Tommie Taylor.
 
 
 40
 The district court concluded that Teletype had failed to rebut the case of discrimination in Taylor's demotion from grade 910 to 906 and subsequent layoff,[19] as the court found that there existed "too many inconsistencies in the explanations offered to be convincing." Taylor v. Teletype Corp., supra, 475 F.Supp. at 968. Despite the Company's assertion that it demoted Taylor for economic reasons, the record contains sufficient evidence in support of the district court's refusal to accept the nondiscriminatory explanation offered by the Company. For example, Taylor was consistently rated as an excellent employee; she had previously been excused from operating the Bruning machine for medical reasons; Mr. Seamon, one of Taylor's supervisors, believed that Taylor would have had sufficient work in the department without being required to operate the Bruning machine. Of course, a court cannot require an employer to hire an individual incapable of performing the job. In this case, however, the district court remained unconvinced that Taylor received the downgrade and layoff because she could not operate the Bruning machine. We cannot conclude that this finding, which depended upon the court's judgment of the credibility of several witnesses, is clearly erroneous. We, therefore, affirm the judgment as to Taylor.
 
 
 41
 B. Larry Peyton.
 
 
 42
 The district court also found that Teletype had failed to rebut the prima facie case of discrimination in Larry Peyton's demotion from an engineering associate (EA) position. Again, the record contains substantial evidence to support the district court's conclusion.
 
 
 43
 Teletype failed to present a consistent explanation for the Company's decision to retain as EAs certain white individuals who had less seniority than Peyton. James Eldridge, the Company official most responsible for downgrades in Peyton's department, presented shifting defenses to justify various downgrade decisions. For example, when comparing Peyton to a white with less experience, Eldridge explained the decision on the basis of the "Rank Order" a highly subjective rating system, but when comparing Peyton to someone with a lower Rank Order position, Eldridge stated that he found specific experience to be critical in making the decision.
 
 
 44
 On the basis of any criteria suggested by Teletype, Peyton possessed greater qualifications than some of the engineers who suffered no demotion. We hold, therefore, that the district court did not err in determining that the employer failed to rebut the prima facie case.
 
 
 45
 C. James Bibbs.
 
 
 46
 The district court found that Bibbs had a satisfactory work record and that Teletype had failed to explain adequately its decision to demote Bibbs while retaining two white employees with less seniority.
 
 
 47
 Teletype contends that in demoting Bibbs, the Company was not choosing between a black worker and a white worker in this case Oden or Ford because Bibbs worked in a different department than the white employees.[20]
 
 
 48
 We cannot discern from the district court's opinion whether the court considered Teletype's explanation or, if it did, on what grounds the court rejected the nondiscriminatory defense asserted by the Company.[21] Therefore, we vacate the court's decision in Bibbs' claim and remand for further consideration.
 
 
 49
 D. Joseph Harris.
 
 
 50
 The district court found that the Company had failed to present any substantial evidence to explain the downgrade of Harris from grade 95 to grade 94 on March 31, 1975.[22] We find no error in this conclusion. Teletype fails to cite any evidence tending to rebut the presumption established by the finding of classwide discrimination. Thus, we affirm the district court's judgment on Harris' demotion.
 
 
 51
 V. Relief to Taylor and Peyton.
 
 
 52
 A. Reinstatement of Tommie Taylor.
 
 
 53
 The district court ordered that Taylor be reinstated to a position as 910 PR representative or to a position comparable in salary, responsibility, creativity, and future opportunities. Teletype contends that the district court erred in ordering reinstatement because of the hostility engendered by the litigation, the court's credibility determinations made against Taylor, and the management-level position to which she would be reinstated.
 
 
 54
 In a Title VII action, however, a court may deny reinstatement
 
 
 55
 only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination. (Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).)
 
 
 56
 Accord, Harper v. General Grocers Co., 590 F.2d 713, 716 (8th Cir. 1979). To deny reinstatement to a victim of discrimination merely because of the hostility engendered by the prosecution of a discrimination suit would frustrate the make-whole purpose of Title VII. Antagonism between parties occurs as the natural bi-product of any litigation. Thus, a court might deny reinstatement in virtually every case if it considered the hostility engendered from litigation as a bar to relief.
 
 
 57
 The district court did express some concern over reinstatement of Taylor to a public relations position in light of certain adverse credibility findings made by the trial court.[23] The district court, however, determined that reinstatement should nonetheless be ordered. The court in fashioning a remedy permitted Teletype to exercise some flexibility in reemploying Taylor in a "comparable" position to that of public relations representative. We cannot conclude that the district court abused its discretion in mandating reinstatement and, therefore, affirm that order.[24]
 
 
 58
 B. Backpay for Larry Peyton.
 
 
 59
 The district court ordered the Company to reinstate Peyton to the first available EA position and award him backpay until his reinstatement or until he rejects an offer of reinstatement. Teletype asserts that their liability for backpay should be cut off as of February 17, 1977, the date on which Teletype offered Peyton a new position as an EA.
 
 
 60
 The failure to accept an offer of reinstatement does not automatically terminate an employee's right to relief.
 
 
 61
 In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal. (Claiborne v. Illinois Central Railroad, 583 F.2d 143, 153 (5th Cir. 1978), cert. denied, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979).)
 
 
 62
 Here, the district court found that Peyton reasonably rejected the offer because of doubts about job security, created at least in part by Teletype's original act of discrimination. We recognize that this portion of the remedial order presents a close question. In light of Peyton's continued diligent efforts to mitigate any loss of earnings,[25] however, we cannot say that the district court abused its discretion in ordering reinstatement with backpay. As the Third Circuit noted, the Supreme Court has emphasized
 
 
 63
 the equitable nature of an award of back pay in cases under Title VII of the 1964 Civil Rights Act and the responsibility of the district court to decide each back pay controversy in a way calculated to achieve a just and equitable result in the circumstances of the case before it. (Jurinko v. Edwin L. Wiegand Co., 528 F.2d 1214, 1216 (3d Cir. 1975).)Thus, we affirm the remedial order in Peyton's case.
 
 
 64
 VI. Attorney's Fees.
 
 
 65
 Teletype also appeals the district court's award of attorney's fees to plaintiffs and intervenors, 492 F.Supp. 405. Because the award may be modified in light of our vacating the permanent injunction and because the total amount of the award be fixed until the claims of all the individual class members have been decided, we do not consider the award to be a final order subject to review at this time. We, therefore, dismiss the appeal on this issue without prejudice.
 
 
 66
 VII. Cross-Appeal.
 
 
 67
 Tommie Taylor,[26] Virginia S. Burke, Earl Jones, and William James Walker appeal the district court's dismissal of their claims. Having fully reviewed the record, we conclude that Teletype successfully rebutted the four individual prima facie cases. Thus, we affirm the dismissal of these claims.
 
 
 68
 Only Taylor's claim merits extended comment.[27] Teletype advanced three nondiscriminatory reasons to rebut Taylor's prima facie case of discrimination in her demotion from Industrial Relations Associate (ANSE 2) to grade 910: Taylor's poor job performance in drafting the 1975 Affirmative Action Plan; her unauthorized absence on March 24, 1975, despite her superior's order not to take the day off; and the plant-wide layoffs required by worsening economic conditions. The district court found that these reasons existed in fact and were not pretextual. We affirm these findings.
 
 
 69
 VIII. Conclusion.
 
 To summarize our opinion:
 
 70
 1) We affirm the district court's conclusion of classwide racial discrimination in demotions for the years 1974-76;
 
 
 71
 2) We vacate the district court's order for permanent injunctive relief and remand for further consideration;
 
 
 72
 3) We affirm the court's findings of discrimination on the claims of Peyton, Harris, and Taylor in her second demotion;
 
 
 73
 4) We vacate the court's finding of discrimination as to Bibbs and remand for further proceedings;
 
 
 74
 5) We affirm the orders for relief on the claims of Taylor and Peyton;
 
 
 75
 6) We dismiss the appeal on attorney's fees without prejudice as premature; and
 
 
 76
 7) We affirm the court's finding of no discrimination on Taylor's first demotion claim and on those of Burke, Jones, and Walker.
 
 
 77
 Affirmed in part, injunction vacated, and cause remanded for further proceedings.
 
 
 
 [1]
 The Honorable Richard S. Arnold, then serving as United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Teletype classifies jobs by a series of two- and three-digit numbers. Hourly-wage positions, generally held by employees covered by the collective bargaining agreement, start with grade 91 and continue through 98. Salaried employees start with grade 903 and continue up to grade 910. Other craft and management personnel positions are denoted by a variety of miscellaneous job categories
 
 
 [3]
 The court held that Teletype had discriminated in promotions to grade 97, grade 98, section chief, and department chief. Teletype, however, successfully rebutted charges of discrimination in the promotion of blacks to: grade 96, trade groups I and II, grades 505-510 (equivalent of 905-910), job setters and machine setters, engineering associates (EA), and certain ungraded positions (UG1, 2, 3 Administrative Employees). The district court there also held that plaintiffs had not established a prima facie case of classwide discrimination respecting discharge practices for the period under consideration. Hoard v. Teletype Corp., supra, 450 F.Supp. at 1065-66
 
 
 [4]
 As will be discussed below, the court found discrimination in Taylor's second demotion, but not in her first
 
 
 [5]
 In reviewing the grant of an injunction under 28 U.S.C. § 1292(a)(1), we have jurisdiction to consider the merits of all issues already tried and determined. See Gaines v. Sunray Oil Co., 539 F.2d 1136, 1140 (8th Cir. 1976); McNally v. Pulitzer Publishing Co., 532 F.2d 69, 74 (8th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); 9 Moore's Federal Practice P 110.25(1) (1980). Here, in particular, we should exercise plenary jurisdiction because of the interrelationship between the injunction and the other issues
 
 
 [6]
 A Griggs-type case challenges facially neutral standards that affect employees in a significantly discriminatory pattern. See, e. g., Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977) (height and weight requirements); Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) (standardized tests); Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971) (high school diploma and standardized test). Here, plaintiffs do not challenge objective criteria; rather, they allege improper use of subjective procedures for demotions
 
 
 [7]
 Some confusion may stem from the district court's statement that
 (t)here is no showing that the disparate impact of layoffs and demotions in 1975 was the result of a conscious effort to harm blacks as such. (Taylor v. Teletype Corp., supra, 475 F.Supp. at 964.)
 This statement, if construed as a finding, could serve as a possible basis to free Teletype from liability under the discriminatory treatment theory because proof of discriminatory motivation is essential to establish such a claim. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977); Kirby v. Colony Furniture Co., Inc., 613 F.2d 696, 702 (8th Cir. 1980); Marshall v. Kirkland, 602 F.2d 1282, 1299 (8th Cir. 1979).
 We do not, however, construe this statement as an ultimate finding of no racial motivation on the part of Teletype. Rather, in light of the opinion as a whole, we believe that the court merely expressed its belief that no direct evidence of conscious or malicious racial animus had been presented. The court found, and we agree, that sufficient evidence existed to allow the court to make the necessary inference of discriminatory racial motivation.
 
 
 [8]
 This result indicates statistically a likelihood of only one or two percent that pure chance was responsible for the demonstrated racial disparity
 
 
 [9]
 The Supreme Court noted that the standard deviation method was not the only way of using statistics to show the likelihood of discrimination. Hazelwood School District v. United States, 433 U.S. 299, 311-12 n.17, 97 S.Ct. 2736, 2743 n.17, 53 L.Ed.2d 768 (1977)
 An alternative approach, suggested by the EEOC, indicates that a 95-percent level of confidence is statistically significant. See also Hazelwood School District v. United States, supra, 433 U.S. at 318 n.5, 97 S.Ct. at 2747 n.5 (Stevens, J., dissenting). The figures here are well within that level of confidence.
 
 
 [10]
 Paragraph 3 of article 28 details the procedures for downgrades and layoffs. A worker selected for a downgrade becomes a surplus employee and may, in line with certain procedures, displace an employee down the scale. Superior position, however, does not guarantee continued employment. Subparagraph 3.2 provides: "A surplus employee who cannot be placed in accordance with this paragraph 3 shall be LAID OFF."
 
 
 [11]
 This evidence might also be used to rebut the prima facie case. For reasons explained in the text, however, these statistics are insufficiently refined to preclude a finding of discrimination for a portion of the period under consideration
 
 
 [12]
 The district court appropriately considered seniority as a defense to individual claims
 
 
 [13]
 We note, as did the district court, that the disparity, although statistically significant, is not of the magnitude that clearly demonstrates intentional discrimination. Indeed, the district court was not compelled to accept the evidence standing alone as establishing a prima facie case and did not do so in this case
 
 
 [14]
 Evidence, such as Teletype's failure to live up to its affirmative action program and its failure to support its affirmative action director, is also relevant to discerning the Company's attitude regarding race
 
 
 [15]
 See section IV infra
 
 
 [16]
 This case is not one involving the necessity of immediate preliminary injunctive relief
 
 
 [17]
 In considering whether to order injunctive relief, the district court should note Teletype's objections about the breadth and vagueness of the injunction. The Company complains that the order is overly broad, as it covers all terms, conditions, and privileges of employment even though appellees challenged only demotion practices. See EEOC v. Local 14, International U. of Operating Engineers, 553 F.2d 251, 256 (2d Cir. 1977); Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974). Teletype also contends that the injunction is inconsistent with the Hoard court's denial of an injunction concerning discharge practices and its grant of narrow relief affecting future promotions. Hoard v. Teletype Corp., supra, 450 F.Supp. at 1065-66. Lastly, Teletype questions the vagueness of the injunction, whose terms merely mirror the statutory language of Title VII. See Payne v. Travenol Laboratories, Inc., 565 F.2d 895, 898 (5th Cir.), cert. denied, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). But see also United States v. Miller, 588 F.2d 1256, 1261 (9th Cir. 1978) (enforcing "obey the law" injunction in Interstate Commerce Act case), cert. denied, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). We recognize the difficulty of achieving a balance between an overly intrusive order, especially where an employer has voluntarily attempted to end discrimination in good faith, and an overly vague injunction, which provides insufficient notice of the conduct required to avoid contempt. We leave the determination of appropriate relief to the district court on remand
 
 
 [18]
 The recent Supreme Court's decision clarifying the burdens of proof in an individual "McDonnell Douglas" case of discrimination does not affect the allocation of burdens in a case of classwide discrimination. See Texas Department of Community Affairs v. Burdine, -- U.S. --, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)
 A McDonnell Douglas prima facie showing requires no proof of wrongdoing, but merely "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Accord, Texas Department of Community Affairs v. Burdine, supra, -- U.S. at --, 101 S.Ct. at 1095. A case of classwide discrimination differs significantly. As noted in the text, a classwide finding establishes the employer as a proven wrongdoer who has maintained a discriminatory practice. Thus, a court may reasonably presume unless the employer proves otherwise that any class member was a victim of that policy.
 
 
 [19]
 The court ruled that the demotion amounted to a layoff because Taylor's supervisor informed her that as a grade 906 she would have to operate a Bruning machine which the Company knew she could not operate for medical reasons
 
 
 [20]
 Because all three worked in grade 94 positions, Bibbs might have "bumped" one of the two if he had sufficient seniority over either one. Apparently, however, he did not have the three months of greater seniority required by the collective bargaining agreement as a prerequisite to "bumping." Bibbs' date of hire was October 14, 1968; Ford's was October 21, 1968; and Oden's was November 11, 1968
 
 
 [21]
 In fact, the findings do not indicate if Ford and Oden were the two whites to whom Bibbs was compared. An examination of defendant's exhibit 7, however, reveals no grade 94 stock selector/keeper with less seniority than Bibbs who was demoted during that period
 
 
 [22]
 We note that the district court carefully considered and accepted Teletype's explanation for Harris' demotion from a 908 job. Harris does not appeal that decision
 
 
 [23]
 The district court credited the testimony of Teletype's witnesses over that of Taylor concerning Taylor's responsibilities in preparing the 1975 Affirmative Action Plan. Taylor v. Teletype Corp., supra, 475 F.Supp. at 966
 
 
 [24]
 Three cases cited by Teletype, although factually similar to this case, merely represent district courts acting within their discretion in denying reinstatement relief. See Vant Hul v. City of Dell Rapids, 462 F.Supp. 828, 834 (D.S.D.1978); Combes v. Griffin Television, Inc., 421 F.Supp. 841, 847 (W.D.Okla.1976); EEOC v. Kallir, Philips, Ross, Inc., 420 F.Supp. 919, 926-27 (S.D.N.Y.1976), aff'd mem., 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). Here, the district court similarly acted within its discretion in fashioning a remedy
 Two other cases cited by Teletype concern plaintiffs who abused their positions of trust while employed. Ayers v. Western Line Consolidated School District, 555 F.2d 1309, 1322 (5th Cir. 1977), rev'd on other grounds sub nom., Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); Williams v. Boorstin, 451 F.Supp. 1117, 1126-27 (D.D.C.1978). Here, a substantially different situation exists. Any impropriety of Taylor related to conflicting testimony, given years after the fact in the midst of litigation. The court found no misconduct related to job performance.
 
 
 [25]
 The total backpay judgment through November 2, 1979, amounts to $663.22
 
 
 [26]
 Taylor's cross-appeal concerns her first demotion from industrial relations associate to a 910 public relations representative
 
 
 [27]
 We note that the cross-appellants' brief contains no arguments relating to the appeals of Burke, Jones, and Walker