Donald E. FIEDLER, Appellant,

v.

INDIANHEAD TRUCK LINE, INC., Appellee.

No. 81–1590.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1981.

Decided Feb. 22, 1982.

Faegre & Benson, Reid Carron, argued, Minneapolis, Minn., for appellee.

Dunkley & Bennett, Jay L. Bennett, argued, Minneapolis, Minn., for appellant.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Fiedler seeks reinstatement and money damages under the Age Discrimination in Employment Act for an allegedly unlawful discharge. He appeals from the district court's grant of summary judgment finding Fiedler's failure to accept Indianhead's offer of reinstatement was an unreasonable refusal to mitigate all damages that eliminated his entire claim. He also contends the district court erred in ruling that damages for pain and suffering are not recoverable under the Act. We remand the issue relating to the defendant's liability on his accrued damages; we otherwise affirm the judgment.

Fiedler was employed by Indianhead from December 1967 to August 14, 1979, at an annual salary in 1979 of $46,000. Less than two weeks after his termination, Fiedler was offered a position by GMW, a trucking firm. On September 17, 1979, Fiedler began to work for GMW at an annual salary of $40,000. Between the time of his termination and the commencement of his employment with GMW, Fiedler remained at home to care for his terminally ill wife.

On October 18, 1979, Indianhead received notice from the Minnesota Department of Human Rights (MDHR) that Fiedler had filed discrimination charges alleging that his termination by Indianhead constituted unlawful age discrimination. On October 19, 1979, Indianhead offered to reinstate Fiedler and to pay any and all benefits he lost as a result of termination. Indianhead mailed this offer to the MDHR on October 19. On November 6, 1979, after learning that its offer may not have been conveyed to Fiedler, Indianhead mailed a letter together with a copy of the reinstatement offer directly to him. Indianhead set November 20, 1979, as the date by which Fiedler had to accept the offer. Fiedler believes that the letter arrived November 8, 1979. His wife died the following day. Indianhead extended the reinstatement offer until November 26, 1979. Negotiation between Fiedler's former counsel and Indianhead began on November 19, but was not concluded by November 26. On March 11, 1980, Fiedler received a letter from Indianhead's counsel stating that the offer of reinstatement had expired by its own terms on November 26, 1979.

Subsequently, Fiedler filed retaliation charges with MDHR and EEOC. He thereafter filed his complaint in federal district court.

In the complaint, Fiedler sought reinstatement and money damages for an alleged unlawful discharge. He also asked for relief because of alleged retaliation. Indianhead was awarded summary judgment on the issue of money damages and reinstatement. The retaliation count was subsequently dismissed.

Fiedler's claim for lost wages can be divided into two parts: (1) any payment due Fiedler after the expiration of the offer of reinstatement on November 26, and (2) any payment accruing between the time of his termination and November 26. The district court determined that Fiedler's entire claim for discriminatory discharge was eliminated because he declined Indianhead's offer of reinstatement, full back pay, and benefits. We affirm this ruling except as to any back pay which had accrued between the time of his termination and November 26.

■■ Back pay is measured by the difference between the compensation an employee would have received but for a violation of the Act and the compensation actually received from other employment. *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 373 (8th Cir. 1974). Generally, the relevant period for measuring back pay is the time between the termination and plaintiff's action upon an offer of reinstatement; however, if plaintiff's rejection of an offer of reinstatement is reasonable, then the offer does not terminate the accrual of damages. *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir. 1981). *See also Claiborne v. Illinois Cent. R.R.*, 583 F.2d 143, 153 (5th Cir. 1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979).

Although we find Fiedler's failure to accept the offer of reinstatement by the date of its expiration did not automatically terminate his right to relief after November 26, 1979, we nonetheless affirm the district court's ruling denying relief in this regard. "In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." *Claiborne*, 583 F.2d at 153, *quoted in Taylor*, 648 F.2d at 1139.

■ Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement. On its

face, Indianhead's offer would have restored Fiedler to the position he held when he was terminated without any loss of back pay or benefits. On the motion for summary judgment Fiedler failed to present any evidence that Indianhead's offer was not a good faith offer. Fiedler has thus failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We conclude that no jury could find that Fiedler's refusal of the offer of reinstatement was reasonable.[1] Thus, we agree with the trial court that the accrual of damages terminated on November 26, 1979.

*Accrued Damages.*

■ Of course, a claimant wrongfully discharged must use reasonable efforts to mitigate his damages. *Hegler v. Board of Education*, 447 F.2d 1078, 1080–81 (8th Cir. 1971) (racial discrimination); *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980); *Wehr v. Burroughs Corp.*, 619 F.2d 276, 278 n.3 (3d Cir. 1980).

Indianhead contends that because Fiedler unreasonably refused its "make whole" offer, he failed to reasonably mitigate damages, since Indianhead's offer would have allowed Fiedler to eliminate his damages entirely. If Fiedler exercised reasonable effort to mitigate his damages the amount of back pay owing to him should be reduced only by the amount he actually earned.

■ There is no doubt that Fiedler exercised reasonable effort in seeking other employment. Within a few days of his termination, Fiedler contacted the owner of GMW. Within a month of the termination, Fiedler began to work for that transportation firm at a salary comparable to the

salary he had received at Indianhead. At the time Fiedler met his duty to minimize damages, Indianhead had not made an offer of reinstatement. In fact, the offer was not communicated to him until nearly eight weeks after he had begun to work for GMW. An employee does not have to accept immediately an offer of reemployment when, in consequence of the breach, he has already entered into a contract for other employment. Moreover, he retains a right for damages accruing from the time of termination until the expiration of the offer of reinstatement. Consequently, Fiedler's failure to accept Indianhead's offer of reinstatement with full back pay and benefits does not retroactively eliminate his entire cause of action. Thus Fiedler will have an action for his accrued damages if Indianhead is found liable for unlawful discharge.

*Damages For Pain and Suffering.*

■ The district court held that damages for pain and suffering are not available under the Age Discrimination in Employment Act. The majority of courts, including four circuit courts of appeals, has reached the same conclusion.[2] We agree with our sister circuits that compensation for pain and suffering is not recoverable in ADEA actions.

Relief in ADEA actions is governed by specific damage provisions of the Act, 29 U.S.C. § 626(b), (c). These sections indicate that enforcement is to be sought pursuant to sections 211(b), 216 (except for subsection (a)), and 217 of the Fair Labor Standards Act (FLSA) that are incorporated into the ADEA. The pertinent provision of the FLSA, 29 U.S.C. § 216(b), provides:

1. Even if a subjective standard is applied, there is ample evidence to indicate that Fiedler believed the offer was made in good faith. Fiedler made two admissions that Indianhead was acting in good faith, and in March 1980 Fiedler attempted to accept the expired offer. Fiedler's personal reasons for refusing the offer: (1) that he wished to have the EEOC investigation continue, (2) that he was traumatized by the death of his wife, and (3) that he did not wish to forego his new job, are all unrelated to the sufficiency of the reinstatement offer itself and

are not relevant in consideration of the reasonableness of Fiedler's refusal.

2. *Slatin v. Stanford Research Inst.*, 590 F.2d 1292 (4th Cir. 1979); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research and Eng'r Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Section 216(b) has never been interpreted to allow damage awards beyond those specifically enumerated in the statute. *Vazquez*, 579 F.2d at 109. Thus, damages for pain and suffering have never been awarded under the FLSA. Except for slight modifications that are not applicable here, Congress intended to incorporate fully the remedies and procedures of the FLSA, *Lorillard v. Pons*, 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978). Since Congress is presumed to be aware that this provision had never allowed damages for pain and suffering, *Lorillard*, 434 U.S. at 581, 98 S.Ct. at 870; *Vazquez*, 579 F.2d at 110, it is reasonable to say that it did not intend for such damages to be allowed under section 626(b).

Fiedler, however, claims that he should be provided relief under that portion of section 626(b) that provides:

> [T]he court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

The authorization of "legal or equitable relief" must be read in "conjunction with the other provisions of the Act, the policies they further and the enforcement framework they envision." *Dean*, 559 F.2d at 1038. We have considered the legislative history of the Act, the unavailability of pain and suffering damages under the FLSA, and the frustration of the clear congressional preference for administrative disposition of administrative claims that allowing pain and suffering damages would cause. *See* 29 U.S.C. § 626(c); *Dean*, 559 F.2d at 1038–39. We agree with our sister circuits that Congress did not intend that damages be awarded under the Act for pain and suffering. *Slatin*, 590 F.2d at 1296; *Vazquez*, 579 F.2d at 112; *Dean*, 559 F.2d at 1039–40; *Rogers*, 550 F.2d at 841–42.[3]

*Conclusion.*

The cause is remanded to the district court for a determination of defendant's liability on accrued damages; the judgment of the district court that plaintiff is not entitled to any other damages is affirmed.

---

**3.** It is tempting to draw some analogies from title VII, 42 U.S.C. § 2000e et seq., which proscribes employment discrimination based on race, color, religion, sex or national origin. Decisional law under title VII allows damages for mental distress. *Cf. Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1272 (8th Cir. 1981). But title VII and the ADEA are not consistent because Congress made the ADEA enforcement provisions a hybrid of the Fair Labor Standards Act and title VII. The clear language of the statutes will often not permit interpreting the statutes in harmony. *Lorillard*, 434 U.S. at 583–84, 98 S.Ct. at 871–872; *Rogers*, 550 F.2d at 840, n.10.