**Tommy McINTOSH, Appellant,**

**v.**

**JONES TRUCK LINES, INC., Appellee.**

**Tommy McINTOSH, Appellee,**

**v.**

**JONES TRUCK LINES, INC., Appellant.**

**Nos. 84–2195, 84–2252.**

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1985.

Decided July 3, 1985.

Rehearing and Rehearing En Banc Denied Sept. 4, 1985.

Morris W. Thompson, Little Rock, Ark., for appellant.

Robert J. Lambert, Jr., Springdale, Ark., for appellee.

Before BRIGHT, ARNOLD, and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

Tommy C. McIntosh sued his employer, Jones Truck Lines, Inc. (Jones), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), 5(g). The district court ruled that Jones had not discriminated against McIntosh, but had retaliated against him for filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and, on this basis, awarded McIntosh backpay. On appeal, McIntosh contends that the district court erred: (1) in determining the amount

of backpay due; (2) in not ordering McIntosh's reinstatement; and (3) in denying McIntosh front pay. Jones cross-appeals, asserting that the district court erred in finding that it had retaliated against McIntosh for filing an EEOC charge. We affirm the district court decision except as to the size of the backpay award. On that issue, we vacate the judgment and remand to the district court with directions to increase the award in accordance with this opinion.

## I. BACKGROUND.

Jones hired McIntosh, a black male, in late 1979, and promoted him to assistant branch manager, a supervisory position, in April of 1981. McIntosh testified that Jones' officials told him that supervisors were entitled to unlimited sick pay. Jones' witnesses testified that this had never been the company's policy. On September 30, 1981, McIntosh entered the hospital for kidney surgery. While there, he discovered that he was not entitled to unlimited sick pay and became angry and upset with Jones. McIntosh filed a charge with the EEOC on October 30, 1981, asserting that Jones denied him unlimited sick pay because he was black. McIntosh filed three subsequent charges with the EEOC alleging retaliatory treatment, demotion, and termination.

While still recovering from surgery, McIntosh returned to work on a limited basis. On January 26, 1982, McIntosh reported to work on a full-time basis, but a heated discussion with his supervisor ensued, and the supervisor fired him. Thereafter, McIntosh unsuccessfully sought other employment in the trucking industry. He became a substitute teacher at the North Little Rock School District in the spring of 1982. In August of 1982, he accepted a full-time teaching position but continued to pursue employment in the trucking industry, including the possibility of starting a small trucking firm. After his discharge, McIntosh also held a part-time job working for his dentist.

On January 18, 1983, McIntosh filed suit in district court alleging that: (1) Jones had discriminated against him by denying him sick pay benefits provided to similarly situated white employees; and (2) Jones had retaliated against him for filing charges concerning this discrimination with the EEOC. After a two and one-half day bench trial, the district court concluded that Jones had not discriminated against McIntosh, but had retaliated against him. The court awarded McIntosh backpay from the time of his discharge until the time he accepted the full-time teaching position, less the amount he earned as a substitute teacher and while working for his dentist.

## II. DISCUSSION.

Under Rule 52(a) of the Federal Rules of Civil Procedure, the district court's findings of fact are entitled to great weight and must not be set aside unless clearly erroneous. *Anderson v. City of Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Di Salvo v. Chamber of Commerce*, 568 F.2d 593, 596 (8th Cir.1978).

Applying the test for retaliatory discharge articulated by this court in *Womack v. Munson*, 619 F.2d 1292 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), the district court concluded that Jones was liable under 42 U.S.C. § 2000e–3(a) for retaliation against McIntosh for the following reasons:

* * * The plaintiff established a *prima facie* case by showing that filing the EEOC charges was a cause of his demotion and termination.

The burden then shifted to the defendant to articulate a legitimate, nondiscriminatory reason for the demotion and dismissal. The defendant established that the plaintiff had an explosive temper and became more provoked and more difficult to work with as animosity developed after his sick pay was denied. * * *

The burden of proof then shifted back to the plaintiff to establish that the "proffered justification was in fact a pre-

text, a cover up for retaliation." *Id.* [at 1296]. * * *

* * * The plaintiff established by a preponderance of the evidence that retaliatory conduct on the part of Rick Johnson was a cause of his demotion and termination. The defendant took the first step after McIntosh exercised his *protected* right to file an EEOC charge. Employers' actions are *not* protected when they evidence such retaliatory intent. * * *

* * * The defendant is, therefore, liable under 42 U.S.C. § 2000e–3(a) for retaliation against the plaintiff.

■ In fashioning appropriate relief under 42 U.S.C. § 2000e–5(g), the district court determined that reinstatement was not a proper remedy due to the "animosity between the parties and the likelihood that they could not work together in peace."[1] The district court awarded McIntosh backpay covering the period from his termination date to the date he accepted a full-time teaching position with the North Little Rock School District, reduced by the amount of money McIntosh earned teaching and from additional work at his dentist's office. We affirm the merits of this case on the basis of the district court's thoughtful and thorough memorandum order but modify the award.

■ We hold that the district court erred in determining that McIntosh abandoned his claim to backpay when he contracted to teach on a full-time basis. One of the major purposes of Title VII is to make persons whole for injuries suffered due to unlawful employment discrimination. *Di Salvo*, 568 F.2d at 598 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)). The record demonstrates that after his discharge, McIntosh fulfilled his duty to mitigate damages by obtaining a teaching position. *See Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1274–75 (4th Cir.1985). McIntosh ended his pursuit of a similar position in the trucking industry only after he had completed his first year of teaching and received a contract to teach a second year. *See Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125 (5th Cir.1981). However, because the full-time teaching position paid less than McIntosh's position with Jones, and because McIntosh did not abandon his pursuit of trucking industry employment until he had completed his first full year of teaching, we conclude that McIntosh was entitled to backpay during the first year in which he taught on a full-time basis. Accordingly, we vacate the judgment as to the award and remand the case to the district court with directions to increase the award to include backpay for this additional year.

We affirm on the appeal in No. 84–2195 and vacate and modify the award on the cross-appeal in No. 84–2252. McIntosh is entitled to costs and attorneys' fees incurred on the appeal and cross-appeal.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

I agree fully with the Court's opinion with one exception. I am not persuaded

---

1. The district court in its opinion observed that McIntosh, as an employee, was hardworking and sincere, but also stubborn, impatient, and hot tempered. The question presented to us is whether the district court abused its discretion in declining reinstatement as an additional remedy.

  Given all of the circumstances reflected in the record, we are not willing to set aside that determination as an abuse of discretion or, as suggested by the dissent, to remand for a further evidentiary hearing.

  In *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981), cited by the dissent, we rejected the argument that an order of reinstatement by the district court should be set aside because of a hostility engendered solely by the employee's discrimination suit. In the present case, however, we review a determination by the district court which denied reinstatement. Here, taking into account the partial fault for hostility by the employee himself, separate from his discrimination lawsuit, a generous backpay allowance and McIntosh embarking upon a new job career, we conclude that we should not set aside the determination of the district court declining reinstatement.

  While reinstatement is the ordinary remedy for unlawful discrimination in employment, special circumstances existing in this case can justify its denial as a matter of discretion by the district court.

that we can properly affirm the District Court's decision to deny reinstatement on the present state of this record. I believe there should be a remand for more precise findings on that issue.

As the Court says, *ante* at 4, the District Court denied reinstatement because of the "animosity between the parties and the likelihood that they could not work together in peace." *McIntosh v. Jones Truck Lines, Inc.*, No. LR–C–83–55, slip op. 18 (E.D.Ark. April 9, 1984). The record amply supports a finding of animosity. But that alone cannot bar reinstatement in a Title VII case. Otherwise, an employer who has violated the law could always avoid reinstatement by making the job sufficiently uncomfortable for a successful plaintiff. We have explicitly ruled on this precise point.

> In a Title VII action ... a court may deny reinstatement only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination. To deny reinstatement to a victim of discrimination merely because of the hostility engendered by the prosecution of a discrimination suit would frustrate the make-whole purpose of Title VII. Antagonism between parties occurs as the natural by-product of any litigation. Thus, a court might deny reinstatement in virtually every case if it considered the hostility engendered from litigation as a bar to relief.

*Taylor v. Teletype, Corp.*, 648 F.2d 1129, 1138–39 (8th Cir.) (citations omitted), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

The real question is, whose fault was the animosity that arose in the work place? Was it McIntosh's fault, for becoming unjustifiably angry over not being given unlimited sick leave? Or was it Jones's fault for illegally retaliating against McIntosh for filing a charge before the Equal Employment Opportunity Commission? The

District Court's detailed findings leave this question open.

McIntosh was a good employee with no workplace problems worth remarking on until the sick-pay incident occurred. The District Court described what happened next in these words:

> The Court concludes that after Mr. McIntosh filed the EEOC charge on October 30, 1981, Rick Johnson [the manager of the branch at which McIntosh worked] deliberately and systematically set out to build a case with a supporting file which would support McIntosh's termination. By the same token, the Court concludes that Mr. McIntosh's unfounded belief that he was given a "raw deal" over the sick pay issue, and his reaction to Johnson's retaliatory treatment, caused him to become a disruptive, belligerent and irresponsible employee.

*McIntosh v. Jones Truck Lines, Inc.*, No. LR–C–83–55, slip op. 6–7 (E.D.Ark. April 9, 1984).

This description, which is amply supported by the record, admittedly reflects no great credit on the plaintiff. The District Court clearly found, however, that his behavior was the result of two causes: his unjustified claim for unlimited sick pay, and the illegal retaliatory treatment inflicted upon him by Johnson. A more refined finding needs to be made before we can be sure whether McIntosh is entitled to reinstatement. Assuming that the animosity between him and Johnson had its roots in both these causes, what would the level of animosity have been if only the first cause, the one attributable to McIntosh's own fault, had been present? Or, to put it another way, if Johnson had not retaliated unfairly against McIntosh, provoking most justly a degree of moral indignation in the plaintiff, would the bad feelings nevertheless generated by McIntosh's protest on the sick-pay issue have risen to a level sufficient to justify the denial of reinstatement? The District Court has not answered this question, and we are in no position to answer it. I would therefore remand for a further finding on the issue of reinstate-

ment, and would ask the District Court, in making that finding, to take into account the fact that Rick Johnson, the manager whose conduct violated the law, and the person against whom McIntosh seems to have become most incensed, is no longer branch manager at this particular location. He is still with Jones, or was still with it when the District Court's opinion was written, and he would have some contact with McIntosh, but his contact on a day-to-day basis would not be nearly so frequent as it was when the incidents of disagreement between him and McIntosh occurred.

At common law, personal-services contracts, including contracts of employment, were not specifically enforceable. An employee could quit, even in breach of contract, and no court would force him to come back to work at the suit of the employer. An employer could fire someone, even in breach of contract, and the employee could not get a court to force the employer to restore his job. Title VII effected a revolutionary change in this state of legal affairs. Under this statute, reinstatement is the normal consequence of an illegal discharge, assuming the employee still wants the job back, which McIntosh does. I believe he is entitled to reinstatement unless the animosity occasioned by his unjustified resentment against the defendant's sick-leave policy was sufficient, without regard to the hostility created by plaintiff's claims of discrimination, to justify failing to reinstate him. In addition, the defendant should have the burden of persuasion on this issue. It is a proven wrongdoer, and the risk of failing to persuade the trier of fact on the question of remedy should rest upon it.

For these reasons, I respectfully dissent in part.