Addie JOHNSON, Plaintiff-Appellant,

v.

AL TECH SPECIALTIES STEEL CORP., Defendant-Appellee.

No. 898, Docket 83–7660.

United States Court of Appeals, Second Circuit.

Argued March 1, 1984.

Decided March 27, 1984.

Lewis B. Oliver, Jr., Oliver & Oliver, Albany, N.Y. (Harriet B. Oliver, Albany, N.Y., of counsel), for plaintiff-appellant.

Paul R. Braunsdorf, Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y. (Joyce R. Parker, Rochester, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, OAKES and WINTER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621 *et seq.*, provide for judicial review of charges of discriminatory employment practices after initial administrative agency conciliation attempts have failed. Those who claim unfair treatment as a result of prejudice based on race, color, religion, sex, or national origin may initiate a Title VII court action within 90 days of the notification by the Equal Employment Opportunity Commission ("the Commission" or "EEOC") that it is unable or unwilling to settle the dispute between employee and employer. 42 U.S.C. § 2000e–5(f). Similarly, violations of the ADEA must first be reported to the EEOC. If that agency is unable "to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion," recourse may be had to the courts. 29 U.S.C. § 626(d).

We are presented here with a Title VII and ADEA plaintiff whose race and age discrimination suit was commenced more than ninety days after he received notice from the EEOC that the agency would not pursue the Title VII claims on his behalf. Moreover, the plaintiff requested compensatory and punitive damages for the ADEA violations. Because permitting such a suit to proceed in federal court would contravene the statutory schemes, we affirm both the trial court's grant of summary judgment on the back pay claims and its dismissal of the compensatory and punitive damage demands. To more fully explicate our legal conclusions, we first set forth the relevant facts.

I.

Addie Johnson, a 57-year-old black man, has worked for Al Tech Specialty Steel Corporation or its predecessor, the bar division of Allegheny Ludlum Steel Corporation, since 1949. His most recent job assignment has been as a lift operator. Johnson was suspended without pay twice in 1953 for refusing to perform assigned duties; in 1964 and 1969 he received warnings, but no forfeiture of pay, for careless workmanship. Before the 1969 infraction, Johnson filed a race discrimination complaint with the New York State Division of Human Rights, but the agency found no probable cause for the allegations. Johnson was docked three days' pay for careless workmanship and damaging company property in 1970. Soon thereafter, he filed another complaint with the Division of Hu-

man Rights, asserting that the 1970 disciplinary actions were in retaliation for the filing of his 1969 complaint. The agency again found no probable cause for accusations. Johnson filed similar charges with the EEOC in 1971. According substantial weight to the state agency findings, the EEOC waited until 1976 to rule that there was no reasonable cause to believe Johnson was a victim of discrimination. On five additional occasions between 1976 and 1981, Johnson was admonished by Al Tech supervisors for careless workmanship.

Johnson continued to seek redress for what he perceived as discriminatory treatment. In 1980, he alleged to the state Human Rights Division that Al Tech was discriminatorily retaliating against him for filing the 1971 EEOC complaint. Again finding lack of probable cause, the Division dismissed the complaint. Johnson filed similar allegations with the EEOC in May, 1980, charging Al Tech with race and age discrimination, falsely accusing him of poor work habits, and retaliating against him for his past complaints. On April 30, 1981, the Commission, again giving substantial weight to the state agency's findings, found no probable cause for the charges. The Commission mailed a "right-to-sue letter" to Johnson on the same day. The letter informed Johnson that he could pursue his claim in federal court within 90 days of receipt. In addition, an attached "Notice of Right to Sue" conspicuously warned Johnson of the necessity of commencing any legal action within the ninety days mandated by 42 U.S.C. § 2000e–5(f)(1). Johnson received the letter and notice on May 5, 1981.

Ninety-seven days after receiving the right-to-sue letter, Johnson filed his pro se complaint, alleging race discrimination, and in a separate affidavit, requested a change of venue from the Northern to the Southern District of New York. Three months later, Johnson was placed on disability leave by Al Tech because of a diagnosis of diabetes and paranoid schizophrenia. He returned to work in May, 1983. Johnson had acquired an attorney in the interim, who filed an amended complaint in January, 1983, seeking damages for race discrimination, 42 U.S.C. §§ 2000e *et seq.*, and age discrimination, 29 U.S.C. §§ 621 *et seq.* Johnson claimed he was given demeaning work assignments and subjected to harassment by superiors. He sought back pay, lost "incentive pay," and compensatory relief, including punitive and emotional distress damages.

Al Tech moved for summary judgment or dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or 12(f). It was apparent from the submissions that Johnson had failed to comply with the 90-day time limit applicable to his Title VII claims. Judge McCurn elicited an explanation from Johnson's attorney, who informed the Court that Johnson told him that an EEOC employee had advised the plaintiff that the complaint could be filed late. Despite the urgings of his lawyer, however, Johnson refused to sign an affidavit attesting to his version of the facts. Concluding that the 90-day time limit barred the action, the trial court granted summary judgment for Al Tech on the Title VII claims. Summary judgment was also granted on certain of the age discrimination claims which sought back pay and lost incentive pay. The other age discrimination allegations, those seeking compensatory awards for emotional distress and punitive damages, were dismissed pursuant to Fed.R.Civ.P. 12(f) on grounds that they are not cognizable under the ADEA. Johnson now appeals the judgment for Al Tech.

## II.

We turn first to the Title VII claims, on which summary judgment was granted for failure to comply with the 90-day rule, because we have previously indicated that the 90-day requirement is a jurisdictional predicate to cognizance of the claim in federal court. *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 309 (2d Cir.1975). In light of subsequent rulings we believe clarification of this issue is in order. While the *DeMatteis* rule was occasionally modified for what were essentially equitable reasons, *see, e.g., Kane v. Douglas, Elliman, Holly-*

*day & Ives*, 635 F.2d 141, 142 (2d Cir.1980) (complaint may be filed later if 90th day is a Sunday), we have never explicitly stated that the 90-day rule should be considered in the nature of a statute of limitations subject to waiver, estoppel, or equitable tolling.

■ Some statutory time limits are treated as jurisdictional requirements, with the result that failure to timely file deprives the court of subject matter jurisdiction and the plaintiff's complaint can be dismissed at any time regardless of the excuse proffered for the delay. *See, e.g., Leonhard v. United States*, 633 F.2d 599, 624 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) (Federal Tort Claims Act). The Supreme Court, however, has evinced a policy of treating Title VII time limits not as jurisdictional predicates, but as limitations periods subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) held that the requirement that charges under 42 U.S.C. § 2000e–5(e) must be filed with the EEOC within 180 days of the allegedly discriminatory practice is not a jurisdictional prerequisite. In so doing, the Court referred to the time limit at issue here, the 90-day rule of 42 U.S.C. § 2000e–5(f), as "a related Title VII provision." *Zipes v. Trans World Airlines, Inc., supra*, 455 U.S. at 398, 102 S.Ct. at 1135. Moreover, the "remedial purpose of the [civil rights] legislation as a whole" would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement. *Id.* Accordingly, we hold that

our prior indication in such cases as *Kane & Elliman, supra*, that the time limit may be equitably tolled accurately reflects how district courts should treat the 90-day rule.

■ In the instant case, the trial court considered the equities of the excuse for delay offered by Johnson: that an EEOC official had erroneously advised him that the complaint could be filed late. This explanation, when substantiated, has been recognized as justification for equitable tolling of the 90-day rule. *See, e.g., Ramos v. Port Authority of New York & New Jersey*, 20 F.E.P. 174 (S.D.N.Y.1976). Johnson, however, refused to attest to his version of the facts in an affidavit despite the trial judge's suggestion and his lawyer's explicit recommendation. We decline to reverse the trial court's conclusion that Johnson failed to meet his Fed.R.Civ.P. 56(e) burden of setting forth specific facts showing that there is a genuine dispute regarding the equities of his failure to comply with the 90-day rule. *See Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983). While the 90-day rule is not a jurisdictional predicate, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Rice. v. New England College*, 676 F.2d 9, 11 (1st Cir. 1982). Accordingly, the grant of summary judgment on the Title VII claim was fully warranted.[1]

### III.

■ We now turn to Johnson's demand for compensatory damages for alleged age discrimination. Having failed to document

---

1. Johnson's appellate counsel, who was not the lawyer who represented Johnson in the trial court, concedes, as he must, that his client refused to substantiate the excuse proffered to Judge McCurn. Johnson's argument on appeal is that the rambling and incoherent nature of his original pro se complaint, and the subsequent diagnosis of schizophrenia, should have alerted the lower court to a different excuse: that Johnson was, by reason of mental illness, incapable of complying with the time limit. We conclude that no error was committed by the trial court's refusal to consider the equities of an excuse not presented to it, and which was not so self-evi-

dent as Johnson now suggests. The original pro se complaint was competently drafted and neatly typed, and while the attached affidavit was hand-written and rambling, it gave no indication that its drafter was mentally infirm. We find no merit in Johnson's suggestion that the trial court could conclude the schizophrenia diagnosed three months subsequent to the filing of the complaint accounted for the seven-day filing delay. The excuse offered by Johnson before the trial court is more plausible, but, as we have noted, the trial judge properly refused to accept the explanation when Johnson refused to substantiate it.

any claims for lost wages, prompting the trial court properly to grant partial summary judgment,[2] Johnson seeks recovery for emotional distress and for punitive damages against Al Tech. We believe that affording victims of discrimination the opportunity to obtain such relief would deter them from fully participating in the ADEA's administrative conciliation scheme, and accordingly we affirm the district court's dismissal of the demands for compensatory damages.

The Third Circuit observed in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), that compensatory damages in excess of the back pay and liquidated damage awards authorized by the ADEA, 29 U.S.C. § 626(b), are not susceptible to computation in an administrative conciliation process. They are more appropriate for determination by a jury, as Congress implicitly recognized when it amended the ADEA to ensure that in cases of willful violations, a jury could determine liquidated damages. *See* H.R.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 528, 535. Accordingly, compensatory damages would be available, if at all, only in an ADEA action brought in federal court, and not in the pre-litigation conciliation process required by 29 U.S.C. § 626(d). If an individual alleging discrimination knew he could recover compensatory damages if he refused to settle during the administrative process and commenced a civil suit, he would have little incentive to resolve the dispute during the conciliation process.

We do not believe Congress intended such a result, and both the plain language of the statute and relevant legislative history reinforce our conclusion. Johnson asserts that an ADEA provision authorizing "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation [injunctive relief]," 29 U.S.C. § 626(b), permits compensatory damage awards. A few district courts, including at least one in this Circuit, have permitted such awards. *See, e.g., Flynn v. Morgan Guaranty Trust Co.*, 463 F.Supp. 676 (E.D.N.Y.1979). The statutory language containing the seemingly expansive remedial authority, however, also provides for enforcement "in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, which does not provide for compensatory damages. The statutory provision in question further states that "[a]mounts owing . . . as a result of a violation . . . shall be deemed to be unpaid . . . wages." 29 U.S.C. § 626(b). Under accepted principles of statutory construction, we consider this specific indication to be dispositive of the drafters' intentions. *See* 2A Sutherland, Statutory Construction § 46.05 at 57 (1973). The more expansive grant of judicial authority relied upon by Johnson permits courts in their discretion

---

2. As the trial court indicated, Johnson is time-barred from recovering lost wages for acts of discrimination occurring more than three years prior to commencement of the suit in the case of willful violations. 29 U.S.C. § 626(e)(1). The only occasions in which Johnson lost pay as a result of disciplinary action by Al Tech occurred prior to 1971. Moreover, Al Tech's industrial relations manager swore in an affidavit that Johnson received the maximum pay authorized for his job category by the collective bargaining agreement, and that Johnson had never requested transfer to another department where he would have been eligible for a new job classification and higher pay. This concrete statement is sufficient for purposes of summary judgment to defeat Johnson's vague allegation that he lost "incentive pay" as a result of discrimination by Al Tech. Fed.R.Civ.P. 56(e).

Johnson now advances the somewhat novel theory that he should be permitted to recover as "unpaid wages" pursuant to 29 U.S.C. § 626(b), the difference between what he would have earned if he worked full time during the period of his disability (November 1981—May 1983), and the smaller sum he actually received as disability benefits. Johnson claims that this difference is at least $10,000. While we do not doubt that Johnson earned less on disability than he would have received if he had worked full-time, his contention that Al Tech's acts of discrimination caused him to become schizophrenic, thereby forcing him into disability status, is conclusory and a "mere allegatio[n in] his pleading" insufficient to defeat a summary judgment motion. Fed.R.Civ.P. 56(e); *see Schering Corp. v. Home Insurance Co., supra,* 712 F.2d at 9.

to supplement back pay awards with injunctive relief, orders of reinstatement or promotion, or similar non-monetary remedies designed to "effectuate the purposes of [the ADEA.]" 29 U.S.C. § 626(b).

A final indication that Congress did not envision punitive damage recoveries is the legislators' statement, made when the ADEA was amended in 1978 to ensure the availability of jury trials on liquidated damages claims, that "The ADEA as amended by this act does not provide remedies of a punitive nature." H.R.Rep. No. 950, *supra*, at 14, U.S.Code Cong. & Admin.News, 1978, p. 535. This subsequent legislative history, while not dispositive, *see Zipes v. Trans World Airlines, Inc., supra*, 455 U.S. at 394, 102 S.Ct. at 1133, is evidence of Congress's understanding that back pay, liquidated damages, and injunctive relief such as reinstatement (or, conceivably, an affirmative action program or similar non-monetary remedies) are the forms of relief a court may award in the event that administrative conciliation fails. Similarly, the courts of nine other circuits have decided that compensatory or punitive damages are unavailable under the ADEA.[3]

In an era of burgeoning federal caseloads, Congress's intent to resolve as many discrimination disputes as possible in agency proceedings rather than in lawsuits comports with sound principles of judicial administration. A system which would permit complainants potentially to recover considerably larger sums if they resist settlement and initiate litigation would undermine this central feature of both Title VII and the ADEA. Accordingly, we affirm the judgment of the district court granting summary judgment and dismissing the compensatory damage allegations in the complaint.

---

**3.** *Perrell v. Finance America Corp.*, 726 F.2d 654 (10th Cir. 1984); *Hill v. Spiegel, Inc.*, 708 F.2d 233 (6th Cir.1983); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7th Cir.), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806 (8th Cir.1982); *Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981); *Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir.1979); *Vasquez v. Eastern Airlines, Inc.*, 579 F.2d 107 (1st Cir.1978); *Dean v. American Security Ins. Co.*, 559 F.2d 1036 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).