Lisa A. JACOBS, Plaintiff,

v.

SUNY AT BUFFALO SCHOOL OF MEDICINE; Roswell Park Cancer Institute; and Buffalo General Hospital, a/k/a Kaleida, Inc., Defendants.

No. 00–CV–1015C(M).

United States District Court, W.D. New York.

March 9, 2002.

Richard H. Wyssling, Esq., Buffalo, NY, for Plaintiff.

Eliot Spitzer, Esq., Attorney General of the State of New York (Peter B. Sullivan, Esq., Assistant Attorney General, of Counsel), Buffalo, NY, for Defendants.

## INTRODUCTION

CURTIN, District Judge.

■ Presently before the court is a motion by defendants SUNY at Buffalo School of Medicine ("SUNY") and Roswell Park Cancer Institute ("RPCI") to dismiss plaintiff's employment discrimination complaint pursuant to Fed.R.Civ.P. 12(b). Items 5, 6. Defendant Buffalo General Hospital, a/k/a Kaleida Inc. ("BGH"), had moved to dismiss under Fed.R.Civ.P. 12(b) and/or 56.[1] Item 7. Richard Wyssling, counsel for plaintiff Lisa Jacobs ("Dr.Jacobs"), filed an affirmation in opposition to the defendants' motions, Item 10. Shortly thereafter, in a letter to the court, Mr. Wyssling withdrew his opposition to defendants' motions. Item 11. Dr. Jacobs then submitted an affidavit in opposition to defendants' motions, Item 15, in response to which SUNY and RPCI submitted a reply memorandum and attorney's declaration. Items 18 and 19. Because the court has considered affidavits in support of and in opposition to the motion, it will be considered under Rule 56.

The court then rescheduled the hearing, and ordered Mr. Wyssling to inform the court whether he still represented the plaintiff, and whether any additional affidavits would be filed. Item 20. Dr. Jacobs filed a Supplemental Affidavit on September 28, 2001, Item 21, to which BGH filed papers in opposition. Items 22 and 23.

Following oral argument on November 19, 2001, the court issued an order requesting further information regarding plaintiff's arguments, and providing a schedule by which defendant could reply. Item 28. No submissions were forthcoming. For the reasons set forth below, SUNY and RPCI's Motion to Dismiss and for Summary Judgment are denied.

## FACTS

In her complaint, plaintiff claims that she was employed by SUNY, RPCI, and Buffalo General Hospital as a medical resident. Item 1, ¶ 5. She was appointed a clinical assistant professor at SUNY, effective November 1, 1997, and was assigned to work at RPCI as a medical resident in the Radiation Oncology Department. *Id.*, ¶ 13. She was supervised at RPCI by, *inter alia*, Kyu Shin, M.D., Program Director; Zachary Grossman, M.D., Acting Chair of the Dept. of Radiation Medicine; Jeff Lee, M.D., Acting Clinical Director of Radiation Medicine; Gary Proulx, M.D., Francis Hahn, M.D., and James Orner, M.D., Supervising Attending Physicians; Cynthia Ikner, M.D., Chief Resident; and Nicholas Petrelli, M.D., Chair of the Department of Surgery. *Id.*, ¶ 14.

On January 21, 1998, Dr. Jacobs was notified that her participation in the Radiation Oncology Department was "no longer possible," and her appointment was terminated effective June 30, 1998. *Id.*, ¶ 15.

Plaintiff lists a number of undated incidents that she argues illustrate the less favorable treatment that she received, as compared to similarly situated male residents. She asserts that Dr. Lee refused to allow her to: (1) work at the Millard Fillmore Outpost, (2) borrow slides for presentations, (3) participate in a study, (4) take vacations and holidays, (5) take a radiation safety course, (6) and complete evaluations of attending physicians. Male

---

1. At oral argument on the motions, held November 19, 2001, the court granted defendant BGH's motion for summary judgment. See Item 28.

residents, on the other hand, were allowed to do these things. *Id.,* ¶ 16. Dr. Lee did not provide her with business cards, although male residents received them. *Id.* In addition, she complains that Dr. Orner and Dr. Lee required plaintiff and other female residents to perform tasks that were the responsibility of the nursing staff, although they never required male residents to do so. Dr. Lee required Dr. Jacobs to bring a male escort whenever she went to dinner with married male doctors, and Dr. Orner hung up on plaintiff, although he never hung up on male residents. *Id.* Further, the librarian at Buffalo General Hospital treated plaintiff in a disrespectful and malicious fashion, although she treated male residents respectfully. *Id.*

Dr. Jacobs also asserted that she was subjected to a hostile work environment based on her gender, characterized by the following examples: Dr. Shin commented on plaintiff's physical appearance, asked her if she had a boyfriend and if she wanted to get pregnant; Dr. Orner and Dr. Proulx repeatedly fondled, hit, prodded, slapped, and otherwise "man-handled" plaintiff against her will and in ways she found offensive; Dr. Lee made offensive jokes on sexual topics in plaintiff's presence; Dr. Proulx asked plaintiff offensive personal questions about her sex life; Dr. Petrelli ordered plaintiff to sit near him during grand rounds, and placed his hand uncomfortably close to her buttocks; and one of the radiation technicians propositioned plaintiff sexually and made offensive personal comments about her appearance at the departmental holiday party. *Id.,* ¶ 17.

Dr. Jacobs complained about these incidents to Dr. Grossman "who failed to take any action to rectify the situation and threatened Plaintiff that he would terminate her if she were not compliant." *Id.,* ¶ 18. She also complained to Dr. Lee about sexual harassment by a janitor, and to Dr. Ikner, who told her she should be flattered by all the male attention. Dr. Ikner also made numerous offensive personal comments about plaintiff's appearance and sex life. *Id.,* ¶ 19.

As a result of these incidents, on January 11, 1999, Dr. Jacobs filed three administrative complaints with the Equal Employment Opportunity Commission ("EEOC") and the New York State Human Rights Commission against each defendant. The administrative complaints are attached to her complaint as Exhibit A. She received right to sue letters from the EEOC on September 9, 2000. Item 1, Ex. B.

Dr. Jacobs brought her complaint in federal court on December 6, 2000, asserting six causes of action: hostile work environment, disparate treatment due to her gender, wrongful termination on the basis of gender, and retaliation.[2] She also asserted two causes of action under the New York Human Rights Law, § 296 of the Executive Law, for hostile work environment, disparate treatment, wrongful termination, and retaliation. Item 1, pp. 6–9.

As indicated *supra,* defendants SUNY and RPCI made a motion to dismiss pursuant to Rule 12(b). Initially, Dr. Jacobs' attorney, Richard H. Wyssling, Esq., opposed defendants' motions. Item 10. However, Mr. Wyssling almost immediately withdrew plaintiff's opposition. Item 11. In his letter to the court explaining the withdrawal, he made reference to a "substantial error" that had been unknown

---

**2.** Although plaintiff specifically enumerates only the wrongful termination and retaliation claims as brought in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the court and defendants have considered the hostile work environment and disparate treatment claims as also having been brought under Title VII.

to him at the time he submitted his affidavit in opposition. *Id.* The error

> was that the termination of my client occurred on or about January 21, 1998 and not five (5) months later as I had alleged in my response to Defendant's Motion for Summary Judgment. Please note that I have now verified that all of the Defendants in one way or another did notify my client on January 21 or January 22 that her termination was effective immediately.

*Id.* The court then received a copy of a letter Mr. Wyssling wrote Dr. Jacobs, informing her that if she wished to object to the motion to dismiss, she should do so prior to July 4, 2001. Item 12. He also inquired whether she wished to relieve him as counsel.

## DISCUSSION

### I. State University of New York School of Medicine ("SUNY") and Roswell Park Cancer Institute's ("RPCI") Motion to Dismiss

#### A. Plaintiff's Claims Concerning Equitable Tolling

SUNY and RPCI have moved to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b). Item 5. They argue that: (1) Dr. Jacobs' Title VII claims are barred because she failed to file her complaint with the EEOC within 300 days after the alleged discrimination; (2) Dr. Jacobs' New York Human Rights Law claim against SUNY is barred by the Eleventh Amendment; and (3) if the court dismissed all claims against SUNY, the complaint cannot proceed against RPCI (a) because of the lack of an indispensable party; or, alternatively, (b) the court should decline to continue to exercise supplemental jurisdiction as a matter of discretion. Item 6.

Dr. Jacobs' affidavit, Item 15, details her experience with the EEOC in her effort to file a claim of discrimination. The facts she asserts therein are relevant to a deter-mination whether equitable tolling would apply, although Dr. Jacobs did not assert her argument in those words. "[S]ometime before June 16, 1998," Dr. Jacobs contacted the EEOC, Buffalo Office, by telephone, to notify them that she was filing discrimination and retaliation claims against the defendants. Item 15, ¶ 3. She was informed that she had to fill out an EEOC New Charge Questionnaire for Sexual Harassment, that she "needed to wait for the complaint to be prepared and written by the EEOC, and that after the complaint was prepared and written by EEOC, that I would be sent the charge to sign and return via mail to the [EEOC]." *Id.* By letter dated June 16, 1998, the EEOC, Buffalo Local Office, sent her the questionnaire, asking her to fill it out as soon as possible. *Id.*, Ex. A. The letter also indicated that time was of the essence, since "a charge of employment discrimination must be filed within the time limits imposed by law, 300 days from the date of the alleged violation," and advised that completion of the form did not constitute a valid charge of employment discrimination. *Id.* The letter also said that "someone from this office will contact you if we need more information to complete the charge filing process." *Id.*

On July 20, 1998, Dr. Jacobs returned the filled out questionnaire, *id.*, Ex. B, to the EEOC via certified mail, *id.*, Ex. D and E, enclosing a letter asking the EEOC to provide her with a right to sue letter and a with copy of the complaint for her to sign. *Id.*, Ex. C. In the meantime, she maintained contact with the EEOC. *Id.* Sometime during December 1998, the EEOC asked her for more information by telephone in order to complete the charge filing process. *Id.* She did not receive those documents until "on or about December, 1998." *Id.* at ¶ 7.

Dr. Jacobs reviewed the draft with her attorney, signed it, and forwarded the

complaint to the EEOC on January 11, 1999. *Id.* at ¶ 8; Item 1, Ex. A. This complaint was apparently accepted by EEOC despite a notification from the EEOC dated September 7, 2000 that it could not investigate her charges because they were "not filed within the time limit required by law." Item 1, Ex. B. Although more than 300 days had passed since notification of her termination, the EEOC nevertheless filed the charge, acknowledging to Dr. Jacobs that the delay resulted from its error, and that it should have prepared the complaint sooner. *Id.* at ¶ 9.

In addition to the above alleged facts, which would be relevant to equitable tolling, Dr. Jacobs also claims that the 300–day bar does not apply to this case under the continuing violation doctrine. *Id.* at ¶ 11. In support of this position, she alleges that after her termination, she received numerous harassing messages, and discriminatory and retaliatory job references which amounted to a continuing violation. *Id.* at ¶¶ 12–30.

## B. Discussion

### 1. The 300–Day Bar

SUNY and RPCI first argue that, because Dr. Jacobs did not file her complaint with the EEOC within 300 days after the alleged unlawful discriminatory acts occurred, her Title VII claim is time-barred pursuant to 42 U.S.C. § 2000e–5(e)(1). Item 6, p. 2. In response, Dr. Jacobs argues that the 300–day bar should not apply in this case because the delay in filing was caused by the error of the EEOC. Item 15, ¶ 9.

#### a. Section 2000e–5(e)(1)

As a rule, a plaintiff cannot sue under Title VII of the Civil Rights Act without first filing a complaint with the EEOC "within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e–5(e)(1).

In this case, Dr. Jacobs was informed of her termination on January 21, 1998, which became effective on June 30, 1998. Item 1, ¶ 15. She sent her complaint to the EEOC on January 11, 1999. Item 15, ¶ 8. There are less than 300 days between June 30, 1998, and January 11, 1999. However, it is well settled that "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect." *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820 (2d Cir.1985). Therefore, January 21, 1998 is the date from which the 300–day time period begins to run, and Dr. Jacobs failed to file her claim within the 300–day statutory period.

#### b. Exceptions

As the Supreme Court has explained, however, "the remedial purpose of the [civil rights] legislation" would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984). Thus, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court . . . ." *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127. Rather, timely filing a complaint is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* Dr. Jacobs argues that, even if she failed to file her complaint with the EEOC within the required statutory period, her Title VII claim should still stand under either the equitable tolling or continuing violation doctrines. Item 5, ¶ 9, 11.

#### i. Equitable Tolling

Under the theory of equitable tolling, a plaintiff may be allowed to file his

or her claim outside the 300–day period where equity so requires. *Long v. Frank*, 22 F.3d 54, 58 (2d Cir.1994) (citing *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir.1986)). The Second Circuit has identified three general instances in which equitable tolling is appropriate, including where (1) a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; (2) a plaintiff actively pursued judicial remedies by filing defective pleadings during the statutory period;[3] or (3) extraordinary circumstances have prevented the employee from exercising his or her right. *Miller v. IT & T Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). Equitable tolling will stay the running of the statutory period "only so long as the plaintiff has exercised reasonable care and diligence." *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir.1993).

Dr. Jacobs claims that she is entitled to equitable tolling of the 300–day deadline because her failure to timely file the complaint was due to the EEOC's error. Item 15, ¶ 9. SUNY and RPCI concede that the statutory period to file a charge with the EEOC may be, in appropriate circumstances, subject to tolling. Item 18, p. 4. They claim, however, that Dr. Jacobs alleged no facts which would entitle her to such relief. *Id.* at p. 3.

The Second Circuit has found that equitable tolling applies where a plaintiff had not filed his complaint with the EEOC within 300 days after the alleged violation of the Act because an EEOC official told him that the complaint could be filed late. *Johnson*, 731 F.2d at 146 (citing *Ramos v. Port Authority of New York & New Jersey*, 1976 WL 543 (S.D.N.Y.1976)). See *Harris v. City of New York*, 186 F.3d 243, 248 n. 3 (2d Cir.1999), where the Second Circuit opined, "Generally courts do not penalize litigants for EEOC's mistakes and misinformation. (*See, e.g., Jackson v. Richards Medical Co.*, 961 F.2d 575, 587 n. 11 (6th Cir.1992), cited and quoted with approval in *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 312 (2d Cir.1996))." Similarly, a court in the Southern District held that equitable tolling was warranted where the plaintiff failed to timely file a complaint since the EEOC mailed its determination letter and Notice of the Right to Sue to the wrong address (even though plaintiff informed EEOC of his change of address). *Smith v. Chase Manhattan Bank*, 1998 WL 642930, at *4 (S.D.N.Y. 1998). Another Southern District court has held that "equitable modification is appropriate where the EEOC misleads a complainant about the nature of his or her rights under Title VII or the ADEA." *O'Connor v. Pan Am.*, 1990 WL 118286 at *2 (S.D.N.Y. May 4, 1990). These cases indicate that where the EEOC, not plaintiff, was derelict in its duties, equitable tolling may apply[4].

---

**3.** In contrast, cases have found that "Title VII claimants are not required to litigate prior to the termination of the EEOC's investigation and attempts at conciliation, and it is not unreasonable per se for an aggrieved party to delay filing an action in federal district court pending the outcome of the administrative process." *Tunis v. Corning Glass Works*, 698 F.Supp. 452, 454 (S.D.N.Y.1988) (citation and quotation omitted).

**4.** In a letter to the court dated February 25, 2002, Item 29, counsel for SUNY and RPCI brought to the court's attention the recently decided case of *Tsai v. Rockefeller Univ.*, 2002 WL 237843 (S.D.N.Y. Feb. 15, 2002), in which Judge Scheindlin held that equitable tolling was not warranted. However, the facts in that case can be distinguished from the case at bar. Tsai argued that equitable tolling should be applied because of her illness, which incapacitated her and prevented her from pursuing her legal rights, and because the EEOC misled her. The court found that because Tsai could have and actually did pursue her legal rights in a number of ways, she was not entitled to equitable tolling on the basis of her illness. On Tsai's alternate theo-

In this case, Dr. Jacobs actively pursued her claim. She contacted the EEOC well within the 300 day statutory period and followed its instructions. Item 15. She did not abandon her claim but continued to make inquiries on the progress of her claims. Moreover, she asserts that the EEOC acknowledged its fault in having delayed in preparing the complaint, *id.*, ¶ 9, explaining on one occasion that it "had lots of claims, and was overworked and understaffed." *Id.*, ¶ 7.

Considering the equities of the excuse offered to explain the delay in filing, and plaintiff's diligence in pursuing her claims, the court finds that Dr. Jacobs is entitled to the benefit of equitable tolling. Thus, her Title VII claims stand. At this point, however, a date cannot be ascertained as to when the period of equitable tolling started. This date would be relevant to determine which instances of alleged discrimination prior to Dr. Jacobs' termination were still timely. The court will discuss this matter with counsel during a meeting scheduled for April 22, 2002 at 11 a.m.

#### ii. Continuing Violation

Because the court finds equitable tolling applicable, it need not reach the question of whether plaintiff's claims are timely under a continuing violation theory.

### C. The Eleventh Amendment

The next question is whether the Title VII and the New York Human Rights Law claims against SUNY are barred under the Eleventh Amendment. For Eleventh Amendment purposes, SUNY "is an integral part of the government of the State [of New York] and when it is sued the State is the real party." *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir.1990) (citation omitted).

It is well settled that when Congress, acting under § 5 of the Fourteenth Amendment, authorizes federal courts to award money damages in favor of a private individual against a state guilty of discrimination under Title VII, the Eleventh Amendment is no bar. *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38 (2d Cir.1977) *citing Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Therefore, Dr. Jacobs' Title VII claims against SUNY are not dismissed.

On the other hand, the Eleventh Amendment generally prohibits suits against state governments in federal court. *Richardson v. New York State Dep't Correctional Serv.*, 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Consequently, Dr. Jacobs' New York State Human Rights Law claims as to SUNY are dismissed.

### D. Indispensable Party and Supplemental Jurisdiction

Finally, SUNY and RPCI argue that if all claims against SUNY are dismissed, the court should either dismiss the remaining

---

ry, the court cited case law which indicated that "[b]ecause the EEOC is not a party to plaintiff's action, it is doubtful whether its actions can create a right to equitable tolling," *citing Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 891 (2d Cir.1995). Still, the *Tsai* court assumed that such an argument could be made, even though the EEOC was not a party, a position confirmed by later Second Circuit case law, *e.g., Harris*

*v. City of New York*, 186 F.3d 243, 248 n. 3 (2d Cir.1999). The issue was then decided on the evidence presented, and the court found that Tsai had presented no evidence confirming her position regarding the alleged misleading statement by the EEOC. In this case, there is evidence of EEOC's foot-dragging in processing Dr. Jacobs' complaint, causing her to forego her legal rights, and warranting equitable tolling.

claims against RPCI on the basis of the absence of an indispensable party, or, alternatively, decline to exercise supplemental jurisdiction as a matter of discretion. Item 6, pp. 5–9.

### 1. Indispensable Party

Under Fed.R.Civ.P. 19(b), the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, if an indispensable party cannot be made a party. Because the court declines to dismiss plaintiff's Title VII claims against SUNY, RPCI's indispensable party argument is moot.

### 2. Supplemental Jurisdiction

As a rule, the district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Since the Title VII claims remain in this case, the court retains supplemental jurisdiction over Dr. Jacobs' remaining New York State Human Rights Law claims.

### CONCLUSION

For all of the above reasons, the court denies defendants State University of New York at Buffalo School of Medicine and Roswell Park Cancer Institute's motion to dismiss and for summary judgment. Item 5. The New York State Human Rights Law claims against SUNY are dismissed. The court will meet with counsel on April 22, 2002 at 11 a.m.

So ordered.