Robert L. MEYERS, Plaintiff

v.

I.B.M. CORPORATION, Defendant

No. 02 CIV. 4517(SCR).

United States District Court,
S.D. New York.

June 29, 2004.

Paul N. Cisternino, Cisternino & Weinstein, L.L.P., White Plains, NY, for Plaintiff.

Allan S. Bloom, Steven M. Warshawsky, Zachary D. Fasman, Paul, Hastings, Janofsky & Walker LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. BACKGROUND:

From 1992 to 1998, Robert L. Meyers (the "Plaintiff") worked as a program manager and classroom teacher for I.B.M. Corporation ("IBM" or the "Defendant") in the New Manager School in Armonk, New York. In this role, the Plaintiff was responsible for running one-week training programs for IBM employees who were transitioning from non-managerial to managerial positions. In late 1998, IBM discontinued the New Manager School and replaced it with a Web-based training curriculum entitled "Basic Blue."[1]

On May 29, 1998, Robert MacGregor ("Mr. MacGregor"), the Manager of Manager Development, sent an e-mail to the Plaintiff, Peter Samardak ("Mr. Samardak"), and James Walsh ("Mr. Walsh") reminding each of them that IBM would be using Lotus Learning Space for the Basic Blue training program. The e-mail stated:

> Back in February and March[,] I had indicated that the decision had been made that we will be using Lotus Learning Space for the New First Line Manager Program. I hope by now you are familiar with Learning Space and understand how the technology works. By the end of June[,] you should understand how to engage employees and facilitate Learning Space. This will give us time to prepare for the implementation of the New First Line Manager program on September 1, 1998.

(Defendant's Exhibit 10).

In September 1998, the Plaintiff met with Mr. MacGregor and discussed the Basic Blue program.[2] During this meeting, Mr. MacGregor allegedly told the Plaintiff that he would not be able to serve

---

**1.** Participants in Basic Blue are given forty hours of remote instruction through the use of Lotus Learning Space software, an on-line interactive Web-based teaching tool. Instructors assist participants with tasks through an e-mail type exchange. Following this remote training, participants attend four and one-half days of classroom training during which the facilitators address a broad range of real world issues that managers are likely to encounter in the field.

**2.** It is unclear on what day in September this meeting occurred.

as a facilitator in the Basic Blue program, and that if the Plaintiff did not find another job within IBM by the end of the year, he would be considered surplus and would have to retire. The Plaintiff also alleges that during this meeting Mr. MacGregor told him that he would not be offered a position with the Basic Blue program because he did not have recent management experience, which the Plaintiff claims he was told was an absolute requirement. At the time of this meeting, the Plaintiff was 58 years old. Mr. MacGregor was 51 years old. Shortly after this meeting, Mr. Samardak, one of the Plaintiff's former colleagues in the New Manager School, who did not have recent management experience, was offered a position facilitating in the Basic Blue program. Mr. Samardak was 49 years old at the time. The Plaintiff notes that two other facilitators in the New Manager School, James Devita ("Mr. Devita"), age 47, and Mr. Walsh, age 62, both of whom lacked recent management experience, retired shortly after the change to the Basic Blue program.[3]

Five to six weeks after his September 1998 meeting with Mr. MacGregor, the Plaintiff obtained a position in IBM's finance department and he transferred to that position, from his previous position with the New Manager School, on or about November 1, 1998. At that time, the Plaintiff assumed the position of Program Administrator, Employee Disbursements, Semiannual Controls Assessment Coordinator. Both before and after this transfer, the Plaintiff was a Band 9 Senior Human Resources Professional.[4] His salary, benefits, and eligibility for retirement pay remained the same; as did the length of his commute.

In January 1999, Mr. MacGregor evaluated the Plaintiff on his 1998 performance and rated him a "3," meaning he had "achieved some commitments."[5] The Plaintiff initiated an internal appeal by bringing a complaint about his rating to his then third-level manager, Richard Martino ("Mr. Martino"). Mr. Martino investigated the Plaintiff's complaints during the first half of 1999, interviewing several individuals including many of the Plaintiff's former colleagues at the New Manager School. In his final report, Mr. Martino concluded that the Plaintiff's 1998 performance rating was appropriate, but that the text of Mr. MacGregor's overall assessment needed to be changed to more clearly reflect the Plaintiff's contributions and results and also to reflect that key modules were not completed by others. Mr. Martino also concluded that the Plaintiff's complaint about being unfairly excluded from the Basic Blue program was not valid. He agreed with Mr. MacGregor that the Plaintiff (a) did not meet the criteria for being a Basic Blue instructor, (b) did not gain significant expertise in the use of Lotus Learning Space, (c) did not support the development of the new approach, and (d) did not have recent management experience. To the contrary, Mr. Martino found that Mr. Samardak had become a leader in the development of the new curriculum and in the use of the new technology to such a degree that Mr. MacGregor believed Mr. Samardak's contributions

---

3. The Plaintiff speculates that discussions similar to his with Mr. MacGregor occurred between Mr. MacGregor and Mr. Devita and Mr. Walsh, but admits that he has no firsthand knowledge of why Mr. Devita and Mr. Walsh retired.

4. IBM "Bands" are job classifications that denote the level of experience, job responsibility and pay. Bands 1–9 are non-executive and Band 10 is managerial

5. IBM has three satisfactory ratings for performance evaluations: "1"—extraordinary performance; "2"—achieved/exceeded most commitments; and "3"—achieved some/most commitments.

warranted him becoming a facilitator in the Basic Blue program.

Dissatisfied with the result of the internal appeal, the Plaintiff sought a Panel Review, which request was denied by Al Wells ("Mr. Wells"), IBM's Director of Employee Relations Programs, who administers the internal appeals program. The Plaintiff's request was denied on the basis that Mr. Wells believed the Plaintiff had received a thorough and impartial review and was not otherwise eligible to participate in the Panel Review process.

On or about August 11, 1999, the Plaintiff filed verified complaints with both the New York State Division of Human Rights (the "Division of Human Rights") and the United States Equal Employment Opportunity Commission (the "EEOC"), claiming that the Defendant denied him equal terms, conditions, and privileges of employment because of his age. (Defendant's Exhibit 8). On or about March 6, 2002, the Plaintiff's counsel mailed and faxed a letter to the Division of Human Rights requesting that the complaint be dismissed so as to allow the Plaintiff to pursue an action in federal court. (Defendant's Exhibit 32). The Division of Human Rights dismissed the complaint on or about April 3, 2002, on the grounds of administrative convenience. (Defendant's Exhibit 32). On or about June 14, 2002, the Plaintiff filed his complaint in the present case. (Defendant's Exhibit 1).

The Plaintiff's lawsuit against the Defendant alleges discrimination under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621–634, and the New York State Human Rights Law (the "HRL"), N.Y. Exec. Law § 296—301. Plaintiff initially alleged: a) that he was unfairly evaluated; b) denied a subsequent Panel Review; and c) forced to vacate his position as a facilitator to assume a less desirable position with limited advancement opportunities. On or about June 30, 2003, the Defendant filed a motion for summary judgment (the "Defendant's Motion"), asserting that: (x) the Plaintiff failed to allege an adverse employment action; (y) that the Plaintiff lacks evidence of age discrimination; and (z) that the Plaintiff's claims are untimely. In the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (the "Plaintiff's Opposition"), submitted on or about July 28, 2003, the Plaintiff conceded that his claims under the HRL are untimely, but asserted that his claim that he was forced to transfer is timely under the ADEA. On or about September 12, 2003, the Defendant submitted a reply brief (the "Defendant's Reply") in support of its motion for summary judgment in which the Defendant argued that, as a result of the Plaintiff dropping his claim under the HRL, his claim under the ADEA became moot because the Plaintiff does not allege damages recognizable under the ADEA.

On or about March 8, 2004, this Court held a pretrial conference. At that conference, counsel for the Defendant stated, and the Plaintiff's counsel agreed, that this matter has been narrowed to one issue. The only remaining claim is the Plaintiff's claim under the ADEA for an allegedly discriminatory transfer out of the New Manager School. The Plaintiff's claims for an unsatisfactory performance review and denial of an internal review have been dropped because the parties agreed these were not adverse employment actions. Further, the parties have stipulated that the Plaintiff's claim under the HRL is time-barred.

## II. *STANDARD OF REVIEW FOR SUMMARY JUDGMENT:*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is properly granted when "there is no genu-

ine issue as to any material fact." Fed. R.Civ.P. 56(c). Thus, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." *Id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the materials it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) does not require the moving party to support its motion with affidavits; rather, the moving party may discharge its burden by showing the court that there is an absence of evidence to support the non-moving party's case. *Id.* If the moving party meets its burden, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Thus, Rule 56(e) requires the non-moving party "to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party may oppose the motion "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* By its evidentiary materials, the non-moving party must allege "concrete particulars, not conclusory allegations[;]" thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar College,* 196 F.3d 435, 451–452 (2d Cir.1999). When considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the party against whom summary judgment in sought. *Id.* at 448.

## III. *ANALYSIS:*

The Defendant has made three primary arguments, two procedural and one substantive, in support of its motion for summary judgment. First, the Defendant contends that the Plaintiff's claims should be dismissed on timeliness grounds. Second, the Defendant's Motion submits that the Plaintiff's claims are moot. Finally, the Defendant argues that under the framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):(a) the Plaintiff has not made a prima facie case for discrimination; (b) the Defendant has offered legitimate, non-discriminatory reasons for the transfer; and (c) the Plaintiff has not shown those reasons to be false or a pretext for discrimination. Before reaching the merits of the Defendant's substantive argument, this Court must address the two procedural arguments.

### A. TIMELINESS:

The first argument advanced by the Defendant in support of its motion for summary judgment is that the Plaintiff's claim under the ADEA is untimely. More particularly, the Defendant submits that the alleged adverse employment action occurred more than 300 days before the Plaintiff filed his claim with the EEOC, and thus is not within the statutory period of limitations.

Before a person can file a civil action under the ADEA, he or she must file a timely charge of unlawful discrimination with the EEOC. 29 U.S.C. § 626(d). When such an unlawful act occurs in a state that has a law prohibiting age discrimination in employment and authorizes a state agency to enforce that law, the charge must be filed within 300 days of the

date the unlawful act occurred. *Id.* In the case at bar, the alleged unlawful act at issue took place in New York, which has such a law prohibiting age discrimination in employment; thus the relevant statute of limitations is 300 days.

■ The statute of limitations begins running "on the date the allegedly discriminatory decision was made and communicated to the employee," which is also said to be the day on which the employee receives "definite notice" of the unlawful act. *Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987); *Miller v. Internat'l Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.1985). The Second Circuit has held that "ordinarily the applicable period starts to run on the employer's commission of the unlawful act and is not tolled pending the employee's realization that the conduct was discriminatory." *Miller,* 755 F.2d at 24. Thus, where the employee is terminated, the employee receives definite notice when it is communicated to him that he will be terminated, not upon his discharge. *Id.* at 23.

■ In the current case, it is undisputed that the decision to transfer the Plaintiff was communicated to the Plaintiff during their September 1998 meeting. Further, in the Plaintiff's Opposition to Defendant's Motion, the Plaintiff accepts the Defendant's contention that only those claims accruing after October 15, 1998 are timely under the ADEA.[6] Thus, to the extent that "definite notice" was communicated during the September 1998 meeting, the Plaintiff's claim is untimely.

Notwithstanding the fact that the decision to transfer was communicated during the September 1998 meeting, the Plaintiff asserts that his claim under the ADEA is timely because he did not receive the requisite "definite notice" of the discriminatory decision until January 1999, when he learned that Mr. Samardak had been accepted as a facilitator for the Basic Blue program. Prior to January 1999, the Plaintiff alleges that he believed that he could not be considered for the Basic Blue program because Mr. MacGregor told him during the September 1998 meeting that recent management experience was necessary. Once Mr. Samardak was allowed to participate in Basic Blue without recent management experience, the Plaintiff claims he became aware of the discriminatory nature of Mr. MacGregor's decision to transfer him. However, as set forth above, the Second Circuit has found that an employee receives definite notice when the employer's decision is communicated to the employee. *See Economu* and *Miller.* Therefore, the Plaintiff's claim accrued as of the date of the September 1998 meeting, which date obviously occurred prior to October 15, 1998; the last date the Plaintiff's claim would have been timely under the ADEA. Accordingly, the Plaintiff's claim is time-barred.

■ Alternatively, the Plaintiff argues that even if his claim is otherwise time-barred, the statute of limitations should be equitably tolled to permit him to bring his claim. The Second Circuit has held, in the context of an age discrimination suit, that a court may toll the running of the filing period if a claimant was "actively misled by his employer or prevented in some extraordinary way from exercising his rights." *Miller,* 755 F.2d at 24. Such "an extraordinary circumstance permitting tolling of the time-bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn

---

**6.** Counsel seems to arrive at this date by counting backward 300 days from August 11, 1999, the date on which the Plaintiff filed his claim with the Division of Human Rights and the EEOC.

that his discharge was discriminatory." *Id.*

In *Wall v. Nat'l Broadcasting Co.*, 768 F.Supp. 470 (S.D.N.Y.1991) [7], Judge Leisure found that "the purported deception by [the defendant]...that [the plaintiff] was terminated because of 'downsizing' of the security department was not sufficient to constitute extraordinary conduct by the defendant justifying the tolling of the limitations period." *Id.* at 475. Further, the *Wall* Court determined that the plaintiff's argument, that the defendant deceived him regarding his dismissal, amounted to nothing more than a claim that a "discriminatory firing should be tolled unless an employer actually informs the employee of its unlawful act." *Id.* Finally, the Court noted that the principles of equity should not entitle the plaintiff to have the statutory period tolled because he waited nine months from the time he learned a younger individual replaced him to file his claim. *Id.* at 476.

In the current case, the Plaintiff alleges that Mr. MacGregor intentionally misled him regarding the significance recent management experience would play in the evaluation of potential Basic Blue facilitators and that he only learned of this alleged falsehood when Mr. Samardak was allowed to facilitate Basic Blue training; despite his lack of recent management experience. Although the Plaintiff does not allege that he was replaced by a younger employee, the Plaintiff's argument nonetheless parallels the plaintiff's argument in *Wall*, and thus should be similarly rejected. Even if the Court accepts the Plaintiff's assertions regarding the Defendant's conduct, the Defendant's "purported deception" does not rise to level of "extraordinary conduct...justifying the tolling of the limitations period." Therefore, the Plaintiff does not receive the benefit of equitable tolling and the Defendant's Motion on timeliness grounds is granted.

B. MOOTNESS:

Even if this Court were to find that the Plaintiff filed a timely complaint, which it does not, the Defendant's Motion advances an additional ground for dismissal-mootness. More particularly, the Defendant argues that by voluntarily dropping his age discrimination claim arising under the HRL, the Plaintiff's remaining claim arising under the ADEA is mooted because the Plaintiff has failed to allege damages recognizable under the ADEA.

While the HRL permits recovery of compensatory damages, the ADEA does not. In the case of a non-wilful violation, the ADEA allows for reinstatement and recovery of back pay. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147 (2d Cir.1984). In the case of a willful violation, the ADEA allows liquidated damages or double damages, which are punitive in nature. *Id.* However, the ADEA does not allow plaintiffs to recover for emotional distress, pain and suffering, or any other type of non-economic damage. *Id.*

The Plaintiff's complaint asserts that he is entitled to compensatory and punitive damages because the Defendant's disregard for his rights caused him to suffer

---

7. In *Wall*, the plaintiff was told that his position was going to be eliminated due to downsizing of his department. *Wall* at 471–472. The plaintiff later learned that his job responsibilities, rather than being eliminated, had remained largely unchanged and had been given to a younger individual. *Id.* The defendant filed a motion for summary judgment, arguing that the plaintiff's claim was untimely. *Id.* To the contrary, the plaintiff argued that the statute of limitations did not begin running until he received notice that, rather than his position being eliminated, he had been replaced by a younger person. *Id.* at 472.

mental anguish, conscious pain and suffering, and emotional distress, and loss of income and other benefits. The Plaintiff does not demand reinstatement as a facilitator or any other form of injunctive relief.

Additionally, the Defendant has stated that the Plaintiff's job classification, salary and benefits were not impacted by his transfer and the Plaintiff has failed to provide any evidence of lost wages or benefits as a result of his transfer. Absent this showing, the Plaintiff cannot recover because the only remaining damages he alleges are for mental anguish, conscious pain and suffering, emotional distress, which are not compensable under the ADEA. The parties do not dispute that the Plaintiff's salary prior to and following his transfer was $106,000. Both as a facilitator in the New Manager Program and in his position in the finance department, the Plaintiff was categorized as a Band 9 Senior Human Resources Professional. His salary, benefits, and eligibility for retirement pay remained the same. Further, his commute also remained essentially the same, only increasing by approximately two miles. Thus, the Plaintiff has not suffered any economic damage. Without evidence showing that the Plaintiff suffered economic damage as a result of the transfer, the Plaintiff is unable to sustain his claims for mental anguish, conscious pain and suffering, and emotional distress. The ADEA does not recognize claims for damage of this sort. Therefore, the Plaintiff's ADEA claim is moot.

C. SUBSTANCE OF THE PLAINTIFF'S CLAIMS:

Having determined that the Defendant is entitled to summary judgment on the timeliness and mootness grounds discussed above in Section III(A) and (B), this Court need not address the Defendant's substantive arguments in favor of summary judgment. However, it should be noted that the Defendant asserts that (a) the Plaintiff has not established a prima facie case of discriminatory conduct because he has not shown (i) an adverse employment action, or (ii) an inference of discrimination. Additionally, the Defendant argues that even assuming a prima facie case, the Defendant has offered legitimate, non-discriminatory reasons for its action and the Defendant argues that the Plaintiff has not shown those legitimate, non-discriminatory reasons to be false, or that discrimination was the real reason for the action.

IV. CONCLUSION:

For all of the reasons set forth above, the Defendant's Motion for Summary Judgment is granted.

It is so ordered.